Civil action to recover on six policies of insurance for total and permanent disability.
Plaintiff alleges in his complaint and amended complaint that defendant issued and delivered to him six certain policies of life insurance, three on 1 August, 1921, and three on 17 August, 1921, in each of which provision is made for payment of certain benefits in the event he should become totally and permanently disabled as set forth in said policies; that during the month of April, 1937, he became totally and permanently disabled by disease so that he was then, and is now, and hereafter will be permanently, continuously and wholly prevented thereby from performing any work for compensation, gain or profit, and from following any gainful occupation; that he filed with defendant his due proof of such disability on 9 September, 1940; that under the terms of the said policies he is entitled to receive from defendant, and defendant is due to pay to him certain amounts as total and permanent disability benefits; and that defendant has refused to pay same after demand.
Defendant in its answer and amended answer to plaintiff's complaint and amended complaint admits that it issued to plaintiff six certain policies of insurance on the dates alleged "with such phraseology as to disability and other matters as are incorporated in said policies," all of which are now and have been since the date of issuance in full force and *Page 351 
that the premiums have been paid; but defendant denies (1) that plaintiff has become totally and permanently disabled as he alleges, or (2) that he has furnished at any time due proof of his alleged total and permanent disability, in accordance with the provisions and conditions of said policies, or (3) that it is indebted to plaintiff for disability benefits as alleged by him.
The record of the evidence offered upon the trial below is too voluminous to be incorporated in detail within the confines of an opinion of reasonable length. Hence, only the salient features need be stated. (S.v. Lea, 203 N.C. 13, 164 S.E. 737.)
Plaintiff offered in evidence the six certain policies of insurance sued upon, each of which contains the following pertinent provisions:
"(a) If the insured, after payment of premiums for at least one full year, shall before attaining the age of sixty years and provided all past due premiums have been fully paid and this policy is in full force and effect, furnish due proof to the Company at its Home Office either (a) that he has become totally and permanently disabled by bodily injury or disease, so that he is, and will be permanently, continuously and wholly prevented thereby from performing any work for compensation, gain or profit, and from following any gainful occupation.
"(b) The Company will, during the continuance of such disability, pay to the insured a monthly income at the rate of ten dollars for each one thousand dollars of the face amount of this policy (but not including dividend additions), etc."
Plaintiff, as witness for himself, testified that he has resided in Sampson County, North Carolina, all of his life and is and has been for thirty-five years a farmer; that he is not equipped physically and mentally to do any other kind of work; that he became sixty years of age on 1 May, 1945; that in each application for the policies of insurance sued on he gave his occupation as a farmer; that it was in 1937 that he first became ill, from which he claims disability; that in early spring of that year, while emptying a sack of chicken feed, he was stricken with a sharp pain over, or in his right hip, and could not finish emptying the sack, and hobbled to the house, and was laid up for the rest of the evening; that the condition remained with him and he did not leave the house for about two weeks; that after two and a half months he went to Winston-Salem to see his brother-in-law, a doctor, for examination and treatment; that though treated by this and other doctors his condition gradually grew worse; that he has arthritis and other complications, affecting his knee and other joints, and he suffers pain constantly; that while before he became ill he did every kind of work that a farmer does, plowing, disking and gathering crops, hauling and loading potatoes, etc., he has not done, has not been physically able to do any kind of farm work since 9 September *Page 352 
1940 — describing in detail his physical condition; that prior to that date he kept his books, but now his wife keeps all the records, crop records and everything; that he has not been physically able at any time to direct, superintend or manage his farm, saying "I cannot get out and attend to it"; and that since that time his wife has been directing, superintending and managing his farm and farm operations.
Plaintiff further testified that in April, 1941, he filled out and mailed to defendant "Insured's Statement of Disability" on form obtained from defendant, in which among other questions he answered these pertinent ones as follows: "5. What date do you claim that you became unable to follow any occupation as a result of your disability? 9th day of September, 1940. 6. Have you had medical advice respecting the nature and cause of claim of disability? Yes. 7. What was the medical diagnosis? Arthritis and other complications. 8. Have you been wholly and continuously prevented from following any occupation since the date given in answer to Question 5? Physically, yes. 9. If your answer to Question 8 is `no' what are the details of any occupation you have engaged in and were they manual, mental or supervisory? Mental and supervisory. Occupation . . . Farmer. Exact nature of duties . . . General farming. From . . . as needed in farming . . . to . . . 11. What was your occupation and the name of your employer on the date given in your answer to Question 5? Manager and owner of farm. Name of employer . . . Myself. 14. What date do you expect to resume your occupation or take up a new occupation? None — day of — none — 19..... none"; that on 2 June, 1941, defendant through its manager wrote plaintiff that "with further reference to your claim for disability, the proofs which have been submitted to this company in your behalf, in our opinion, are not sufficient to show you to be totally and permanently disabled within the meaning of the terms of the policies; neither has the company obtained other information which shows you to be totally and permanently disabled. The above statement of our reasons for failing to allow disability benefits is, of course, made without prejudice to the right of the company to assert other reasons for disallowing the claim at this time . . ."; and that on 17 June, 1941, defendant through its manager, again wrote plaintiff: "The Home Office advised that they have carefully reviewed the information in their file and do not feel that any change in the Company's action as outlined in our letter of June 2, 1941, is warranted, etc."
On the other hand, evidence offered by plaintiff tended to show that he lives at Erin in Piney Grove Township, Sampson County, North Carolina, on a farm inherited by him from his father and sister, containing about 800 acres, of which 150 acres are tillable and in cultivation, and that his wife owns a farm in Duplin County, containing approximately *Page 353 
331 acres, of which about 119 acres are cultivatable, and same were cultivated by tenants and by hired labor.
And in this connection, plaintiff, under cross-examination, testified: "We operate these two farms, you might say, as a partnership, since we file a joint income tax"; that one bank account in his name was kept in the Bank at Mt. Olive; that all deposits were put into that account, and all expenditures were paid by check drawn on that account; and that, in his language, "I wrote and signed the checks for the farm and whenever the necessity arose I applied to the bank and borrowed money. My principal duties were to provide funds for the operation of the farm. I have already testified that I did the banking business, looked after the deposits and loans with the Bank of Mt. Olive."
Plaintiff, continuing, on cross-examination, identified bank ledger sheets of his account showing the amounts deposited each month and totaling more than $75,000, during the period beginning 1 September, 1940, and ending 1 September, 1945; and it is admitted of record that the amount deposited is made up of the following: $6,902.40 in September, October, November, and December, 1940; $18,964.46 in 1941; $14,685.70 in 1942; $12,865.35 in 1943; $13,948.84 in 1944; and $9,874.45 in the first eight months of 1945.
Plaintiff further identified various checks drawn on his account: (1) those given by him in September, 1940, beginning with the 4th day, and ending the 30th, approximately forty-two in number, pertaining to business transactions connected with his farm, some at home, others in Mt. Olive and in Goldsboro; (2) those given by him in October, 1940, the first on the 2nd day and the last on the 31st, approximately thirty-nine in number, as to which he testified: "Looking at the October checks, I wrote checks for business transactions practically every day . . . Everything I did was paid with checks. I wrote all of these checks. They were for some definite purpose . . . They all represent money I was paying out in connection with the operation of my farm or my wife's"; (3) those given by him in November, 1940, the first on the first day and the last on the 25th day, as to which he testified: "These checks you have asked me about are checks for business transactions in the month of November, 1940. I won't say I signed one every day, but I signed the checks and there are 54 of them"; and (4) those given by him in December, 1940, the first on the 2nd day and the last on the 27th, as to which he testified: "The 38 checks you show me were all signed in December, 1940. They represent almost one business transaction a day. In addition to those, I think I was having some building done in November and December. The checks in the cover marked `West End House Material and Labor' . . . were signed by me. They must have been for labor or some material." *Page 354 
Plaintiff further identified, and it was agreed that he issued 544 checks in 1941, 389 in 1942, 375 in 1943, 465 in 1944, and 291 in the first eight months of 1945, covering transactions similar to those concerning which he had already testified. Testifying further in more detail as to the above checks, plaintiff stated that while all checks were signed in his name, part of them were signed by his wife. "It is just a question of whether I was there."
And the record shows that the parties stipulated that the checks of S. R. Ireland issued from September, 1940, to September, 1945, may be correctly summarized as being principally for the following: Farm supplies, farm machinery, cattle, livestock, fertilizer, seed, feed, groceries, gasoline, oil, labor, auto and truck and tractor supplies, parts and repairs, lumber and building supplies, and material for home and farm dwellings and buildings, weekly settlements for labor on farm, final settlements with tenants, payment of notes to bank, payments to Land Bank, settlement for farm products, loans, cash, etc.
Plaintiff also identified various notes executed by him for loans, and in relation to other business transactions in connection with the operation of his farm in the years 1941, 1942, 1943, 1944 and 1945, and various other notes executed by him and his wife jointly for loans in the same years, as to all of which plaintiff testified that these notes represent business transactions for the purpose of carrying on operations on his farm and on that of his wife. And, speaking of notes given in 1943, plaintiff testified: "Whether originals or renewals, I paid them, and that was part of my carrying on my farming operations and transactions for 1943 . . . having borrowed the money from both banks, it was deposited in the Bank of Mt. Olive from time to time and paid off with proceeds of the crop, all that we borrowed, and all of the notes show that after they were borrowed I later went back and paid them"; and that notes given in 1945 have been paid.
Plaintiff also identified two financial statements made by him to the Bank of Mt. Olive in connection with loans from the bank. One dated 21 April, 1941, showing as liabilities "Notes payable to Bk. $300.00; Mortgages on 565 a. to F.L. Bk. — $8000.00, and Net Worth $28,800.00, exclusive of $6,000.00 as life insurance," and the other dated 16 December, 1943, showing as liabilities "Notes payable to Bank, $500.00; Accts. payable to various $350.00; Mortgages on 800 a. Fed. Land Bk. $1,500.00; Net Worth $36,550.00," exclusive of life insurance as an asset.
Plaintiff also identified applications to War Price and Rationing Board signed by him and by his wife in 1942 and 1943 for gasoline for use in operation of automobile, truck and tractor in connection with farm operations — it being stated in the application of his wife, among other things, that husband, "due to his physical condition . . . has to use *Page 355 
it everywhere, even to go around the farms . . . He's Assistant Regis. Draft Board, Piney Grove, and Judge of Elections, Piney Grove. These are just samples of necessary trips known . . .," and that the mileage on this vehicle last thirty days is 1,200 miles.
Further the testimony of plaintiff, in connection with the business transactions to which the checks and notes relate, reveals his varied continuous activities, duties and accomplishments in the operation of his farm and that of his wife, among others: That while on account of his physical condition he had difficulty in walking and in getting in and out of his automobile, he could and did drive his automobile as well as his truck, but that on long trips he usually had someone to drive for him; that in making purchases and in selling livestock, marketing eggs, tobacco, cotton and other farm products, in attending sales in stockyard at Goldsboro and tobacco market, in conducting financial transactions, and in transacting various other business matters pertaining to the operation of his farm, plaintiff made numerous trips to Goldsboro, Mt. Olive, Faison, Clinton, Lumberton and other places; that (quoting him) "Sometimes I did not attend the sales in stockyard at Goldsboro but as a rule I went to buy or sell"; that in 1941, 1942, 1943, 1944 and 1945 he "sometimes regularly attended" the tobacco market in Lumberton where "we sell."
Plaintiff further offered testimony of numerous persons who expressed opinion that from their knowledge and observation of him, he has not been able since 9 September, 1940, to carry on regularly the duties of a farmer. These witnesses further gave testimony that plaintiff, who studied agriculture at State College, has a bright and excellent mind, and is a man of good character, fine intelligence, and scientific knowledge and ability, and is a good business man and a good executive.
And plaintiff further offered evidence tending to show many activities of his wife in carrying on and sharing the duties and responsibilities of their farm operations.
The court, having overruled its motion for judgment as of nonsuit at the close of plaintiff's evidence, defendant, preserving exception thereto, offered evidence as follows: (1) The bank ledger sheets, the checks, notes, financial statements, and applications for gasoline, identified by plaintiff, as hereinabove set forth, and (2) oral testimony tending to show activities of plaintiff in connection with his farming operations since 1940, and as to his mental alertness and ability to direct farming operations and arrange for financing of same.
Motion of defendant for judgment as of nonsuit at close of all the evidence was overruled, and defendant excepted.
It being agreed that the court might answer the third issue as a matter of law, dependent upon the jury's answer to the first two issues, *Page 356 
the case was submitted upon these issues, which the jury answered as shown:
"1. Has the plaintiff, Samuel R. Ireland, since September 9, 1940, been totally and permanently disabled by bodily injury or disease so that he is and will be permanently, continuously and wholly prevented thereby from performing any work for compensation, gain or profit, and from following any gainful occupation? Answer: Yes.
"2. Did the plaintiff, Samuel R. Ireland, submit to The Mutual Life Insurance Company of New York, prior to the institution of this action, due proof of total and permanent disability as provided by the terms of his policies? Answer: Yes.
"3. If so, what amount is plaintiff entitled to recover of the defendant? Answer: Full amount due under policies with interest."
From judgment for plaintiff on verdict rendered, defendant appeals to Supreme Court and assigns error.
This question is decisive of this appeal: Is the evidence, offered upon the trial below, taken in the light most favorable to plaintiff, as must be done in considering motion for judgment as in case of nonsuit, sufficient to support an affirmative answer to the issue as to whether plaintiff "has become totally and permanently disabled by bodily injury or disease, so that he is, and will be permanently, continuously and wholly prevented from performing any work for compensation, gain or profit, and from following any gainful occupation," that is, within the express provisions of the policies upon which suit is based? A negative answer comes from the decisions of this Court in these cases: Buckner v. Ins. Co., 172 N.C. 762,90 S.E. 897; Thigpen v. Ins. Co., 204 N.C. 551, 168 S.E. 845;Boozer v. Assurance Society, 206 N.C. 848, 175 S.E. 175; Hill v. Ins.Co., 207 N.C. 166, 176 S.E. 269; Carter v. Ins. Co., 208 N.C. 665,182 S.E. 106; Whiteside v. Assurance Society, 209 N.C. 536,183 S.E. 754; Lee v. Assurance Society, 211 N.C. 182, 189 S.E. 626;Mertens v. Ins. Co., 216 N.C. 741, 6 S.E.2d 496; Medlin v. Ins. Co.,220 N.C. 334, 17 S.E.2d 463; Jenkins v. Ins. Co., 222 N.C. 83,21 S.E.2d 832; Ford v. Ins. Co., 222 N.C. 154, 22 S.E.2d 235.
Thus in keeping with these decisions defendant's exception to the refusal of its motion, at the close of all the evidence, for judgment as in case of nonsuit is well taken. And in view of the pronouncements *Page 357 
so recently made by this Court in these cases, further treatment of the subject here would be unnecessarily repetitious.
It is sufficient to say that as plaintiff has agreed, so shall he be bound. Even though there is much opinion evidence as to plaintiff's physical disability, the facts remain, as revealed by his own testimony, that through the years he has been actively engaged continuously in business transactions of various kinds in connection with the operation of his farm and that of his wife. These negative total and permanent disability within the meaning of the provisions of the policies upon which he sues. Adverting to a similarly factual situation in the Thigpen case,supra, Brogden, J., aptly said: "The law is designed to be a practical science, and it would seem manifest that a plain, everyday fact, uncontroverted and established, ought not to be overthrown by the vagaries of opinion or by scientific speculation."
The present case is distinguishable in factual situation from those in this line of cases: Lee v. Ins. Co., 188 N.C. 538, 125 S.E. 186;Brinson v. Ins. Co., 195 N.C. 332, 142 S.E. 1; Bulluck v. Ins. Co.,200 N.C. 642, 158 S.E. 185; Smith v. Assurance Society, 205 N.C. 387,171 S.E. 346; Misskelley v. Ins. Co., 205 N.C. 496, 171 S.E. 862; Guy v.Ins. Co., 206 N.C. 118, 172 S.E. 885; Leonard v. Ins. Co., 209 N.C. 523,183 S.E. 723; S.C., 212 N.C. 151, 193 S.E. 166; Fore v.Assurance Society, 209 N.C. 548, 184 S.E. 1; Blankenship v. AssuranceSociety, 210 N.C. 471, 187 S.E. 59.
The judgment below is
Reversed.