W. W. BULLUCK v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.

(Filed 22 April, 1931.)

1. **Insurance R c—Ability to do odd jobs of comparatively trifling nature will not preclude recovery under disability clause.**

In order for an insured to recover upon a disability clause in a policy of life insurance requiring that the insured be rendered incapable of following "a gainful occupation" in order to be entitled to payments thereunder, the insured must show more than inability to follow his usual avocation, and must show incapacity to follow any calling for which he is physically and mentally qualified, but ability to do odd jobs of comparatively trifling nature will not preclude recovery, and the question of whether the insured has suffered such total disability is for the jury.

2. **Same—Expert testimony that claimant's disease would not result in total disability held not conclusive.**

Testimony of experts in an action to recover upon a disability clause in a life insurance policy that the disease with which the plaintiff was suffering would not result in total disability is not conclusive on the question of whether the plaintiff was able to follow a gainful occupation,

and where there is evidence in behalf of the plaintiff that he was totally and permanently rendered incapable of engaging in gainful occupation the conflicting evidence is properly submitted to the jury under correct instructions from the court.

CIVIL ACTION, before *Cranmer, J.,* at November Term, 1930, of EDGECOMBE.

The plaintiff alleged and offered evidence tending to show that the defendant issued and delivered to him two policies of life insurance, to wit, No. 3805892 and No. 3826994. The first policy was issued on 13 April, 1927, and the second policy on 14 June, 1927. It was admitted by the parties that all premiums had been paid on both of said policies and that proofs of claim in due form had been filed with defendant. The policies provided for certain benefits in the event of total and permanent disability before age 60. The pertinent clause is section 3 and is as follows: "Total Disability: Disability shall be considered total when there is any impairment of mind or body which continuously renders it impossible for the insured to follow a gainful occupation. Permanent Disability: Total disability shall, during its continuance, be presumed to be permanent; (a) If such disability is the result of conditions which render it reasonably certain that such disability will continue during the remaining lifetime of the insured; or, (b) If such disability has existed continuously for ninety days."

In the spring of 1928 the plaintiff suffered an attack of psoriasis. The medical testimony was to the effect that this disease "is a chronic inflammatory condition of the skin with dried-in scales that look like mica. It has a tendency to appear on the back of the arms and on the front of the legs. Characteristically it gets better in summer and worse in winter. Itching is usually present, but in a light form." The physicians further testified that they had never seen a patient suffering with this disease get entirely well.

Plaintiff testified that the disease had destroyed one toe nail and that it prevented him from sleeping. He said: "If you ever had your lips split open from cold weather, that is exactly how it feels. If the temperature is just right at night, I will go ahead and sleep all right. . . . I have to get up and change my temperature at night, use some salve and take a bath. Last night I got up half dozen times or more. . . . I have lost twenty pounds since spring. . . . I have not undertaken to run a farm since 1928. Prior to that time I did actual work when necessary. . . . I couldn't do any kind of work—am not physically able—couldn't hold out. I can drive an automobile a little while, but wouldn't undertake to drive from here to Raleigh. When I get jaded, it looks like everybody is going to run into me. . . . I am unable to clerk in a store on account of my feet and

toe nails. . . . I don't know of any work or gainful occupation that I could follow. . . . My hair has started to come out. . . . When I scratch blood comes like a fly bite. . . . I have not farmed any since as I have been unable. . . . I know of no work I could do in my present physical and mental condition." Plaintiff offered other testimony tending to show that he was physically unable to engage in a gainful occupation.

There was evidence to the effect that the plaintiff assisted in selling Dust Down for boll weevils in the summer of 1929. Plaintiff testified, "I have earned less than $150 since the last day of March, 1929."

Two physicians, admitted to be medical experts, testified that in their opinion "psoriasis does not result in rendering a man unfit to carry on any gainful occupation." One of the physicians stated that "at times it would make any gainful occupation physically painful."

The following issues were submitted to the jury:

1. "Has the plaintiff had any impairment of mind or body which continuously renders it impossible for him to follow a gainful occupation?"

2. "If so, is such disability permanent as defined in the policy?"

The jury answered both issues "Yes," and judgment was entered upon the verdict, from which judgment the defendant appealed.

The defendant in its brief states that the only question involved is "whether the plaintiff is entitled to receive the benefits under the terms of the policy?" "If so, the amount of the judgment is correct."

*T. T. Thorne and J. W. Grissom for plaintiff.*
*Pou & Pou, Gilliam & Bond and Connor & Hill for defendant.*
*Frederick L. Allen, General Counsel Mutual Life Insurance Company of New York, of counsel.*

BROGDEN, J. Five recent decisions of this Court discuss the liability of insurance companies to the assured resulting from permanent disability to engage in a "gainful occupation," to wit: *Buckner v. Ins. Co.,* 172 N. C., 762; *Lee v. Ins. Co.,* 188 N. C., 538; *Fields v. Assurance Co.,* 195 N. C., 262; *Brinson v. Ins. Co.,* 195 N. C., 332; *Metts v. Ins. Co.,* 198 N. C., 197. The *Buckner case, supra,* declared: "The authorities are practically unanimous that under the terms of this policy plaintiff cannot recover without showing a bodily injury that will incapacitate him not only from following his usual avocation of fireman, but also from pursuing any other gainful occupation. The language is too plain and the meaning too unmistakable to permit an enlargement of the terms of the contract by construction. It is unfortunate for the plaintiff, but "it is so nominated in the bond." The defendant relies upon the *Buckner case.*

There is a sharp divergence among courts and text-writers in regard to the construction of clauses in insurance policies dealing with such total or permanent disability as to render it impossible "for the insured to follow a gainful occupation." This divergence has produced two schools of thought upon the subject. The first school of thought adheres to a strict construction of such contracts, and the second school maintains a liberal construction thereof. The view of the liberal constructionist is well stated by the Missouri Court in *Foglesong v. Modern Brotherhood,* 97 S. W., 240. The pertinent clause in the policy of insurance under discussion provided for indemnity for "permanent and total disability . . . which renders him unable to carry on or conduct any vocation or calling." The Court said: "Common knowledge of the occupations in the lives of men and women teaches us that there is scarcely any kind of disability that prevents them from following some vocation or other, except in cases of complete mental intertia. We have examples of persons without hearing and without sight following a vocation—some without feet, and some without hands, engaged in business. The achievements of disabled persons are seemingly marvelous. Under defendant's theory, the plaintiff might embark in the peanut trade or follow the business of selling shoestrings or lead pencils, or follow some similar calling; in which instances, under the rule invoked, there would be no disability within the meaning of the policy. In our opinion, such was not within the contemplation of the parties."

North Carolina has been classified in the decisions of various courts as adhering to the strictest construction of such contracts. This classification has resulted from the decision in *Buckner v. Ins. Co.,* 172 N. C., 762, which has been cited in many jurisdictions. 24 A. L. R., 203; 37 A. L. R., 151; 41 A. L. R., 1376; 51 A. L. R., 1048; *McCutchen v. Pacific Mutual Life Ins. Co.,* 151 S. E., 67.

The *Buckner case* was distinguished in the *Brinson case, supra,* in which latter case the Court said: "That in addition to his bodily injuries, resulting directly from the accident, plaintiff has suffered and is now suffering from a disease, which incapacitates him from pursuing not only his occupation as a farmer, but also any other gainful occupation, in which effort, either physical or mental is required."

None of the cited cases undertake to define the expression "gainful occupation." The Supreme Court of Minnesota, in *Carson v. N. Y. Life Ins. Co.,* 203 N. W., 209, discussed liability under a policy providing indemnity when the insured "has become wholly disabled by bodily injury or disease so as he is and will be presumably thereby permanently and continuously prevented from engaging in any occupation whatever for remuneration or profit." Construing the meaning of the words used the Court said: "It must mean any occupation similar to that in which he had ordinarily been engaged or for which he may be

capable of fitting himself within a reasonable time. If the disability prevents the insured from performing the essential parts of such an occupation with substantial continuity, it should entitle to the income payment promised." The Texas Court in *Great Southern Life Ins. Co. v. Johnson,* 25 Southwestern (2d), 1093, considered a policy of insurance providing indemnity if the disability resulted from bodily injury or disease "so that he is and will be thereby permanently, continuously and wholly prevented from performing any work for compensation or profit or from following any gainful occupation." The Court said: "The term 'gainful occupation' is likewise a relative one; the insured's occupation and earning capacity at the time the policy issued was in contemplation of the parties—what would be a 'gainful occupation' for one may not be such for another. A prosperous merchant with a constantly expanding business, earning large and continually increasing profits, who because of injuries received is totally disabled from continuing that business, and it becomes bankrupt as a result, certainly cannot be said to pursue a 'gainful occupation,' compared to the other, if he is fortunate enough to earn something, though out of all proportion to what he had previously earned." *Fagerlie v. N. Y. Life Ins. Co.,* 278 Pac., 104; Cooley's Briefs on Insurance, Vol. 6, 5533, *et seq.;* Couch—Cyclopædia of Insurance Law, Vol. 7, section 1686, *et seq.*

The reasoning of the opinions seems to indicate that engaging in a gainful occupation is the ability of the insured to work with reasonable continuity in his usual occupation or in such an occupation as he is qualified physically and mentally, under all the circumstances, to perform substantially the reasonable and essential duties incident thereto. Hence, the ability to do odd jobs of comparatively trifling nature does not preclude recovery. Furthermore, our decisions and the decisions of courts generally, have established the principle that the jury, under proper instructions from the trial judge, must determine whether the insured has suffered such total disability as to render it "impossible to follow a gainful occupation."

The physicians both testified that in their opinion the disease from which plaintiff suffered would not result in permanent disability, and the defendant insists that, as the disease is uncommon, the nature and course of the malady lies exclusively in the field of expert and scientific knowledge. Hence, the testimony of the physicians should be accepted as conclusive upon such technical subject. Undoubtedly, this view of the law, in proper cases, would perhaps be sound and maintainable, but in the case at bar the paramount question was whether the plaintiff was able to engage in a gainful occupation. The ability of a party to perform physical or mental labor is not a question of such exclusively technical significance as to permit expert testimony to be given conclusive effect. Indeed, the identical question arose in *Fields*

*v. Assurance Co., supra,* in which the physician had testified that the plaintiff was not in his opinion permanently disabled. Moreover, there was a conflict between the testimony of physicians and the plaintiff with respect to permanent disability, and it has been the uniform policy of the law of this State, for many years, to submit conflicting evidence to the jury upon the theory that in the last analysis the jury is the weigh-master of the evidence.