MATILDA P. DRUMMONDS v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.

(Filed 14 January, 1955.)

**Insurance § 34d—Nonsuit in action for disability benefits under group policy held proper for failure of proof of disability at time of termination of employment.**

Plaintiff's evidence tended to show that she had suffered from asthma and high blood pressure for sometime prior to her discharge, but her medical expert witness testified to the effect that while such ailments would constitute a handicap, he was unable to state that plaintiff was totally and permanently disabled therefrom at the time of her discharge, and plaintiff herself swore under oath in applying for unemployment benefits after her discharge that she was able to work. *Held:* Nonsuit was properly entered in her suit upon her certificate under a group policy to recover for total and permanent disability, since her evidence fails to show that she was totally and permanently disabled at or before the date of the termination of her employment.

APPEAL by plaintiff from *Paul, Special Judge,* May Term, 1954, of FORSYTH.

This is an action to recover total and permanent disability benefits under a group insurance policy issued by the defendant to cover the employees of R. J. Reynolds Tobacco Company. From judgment of involuntary nonsuit, the plaintiff appeals, assigning error.

*Elledge & Johnson for plaintiff.*

*Womble, Carlyle, Martin & Sandridge for defendant.*

DENNY, J. The plaintiff for some years prior to 4 May, 1953, had been in the employ of R. J. Reynolds Tobacco Company as a "strip preparer." The group policy and the individual certificate issued and delivered by the defendant to plaintiff, in accordance with the terms thereof, were in full force and effect on 4 May, 1953, on which date the employ-

ment of the plaintiff with R. J. Reynolds Tobacco Company was terminated.

The insurance policy provides as follows: "In the event that any Employee while insured under the aforesaid policy and before attaining age 60 becomes totally and permanently disabled by bodily injury or disease and will thereby presumably be continuously prevented for life from engaging in any occupation or performing any work for compensation of financial value, upon receipt of due proof of such disability before the expiration of one year from the date of its commencement, the Society will, in termination of all insurance of such Employee under the policy, pay equal monthly Disability-installments, the number and amount of which shall be determined by the Table of Installments below; . . ."

It was further provided in the policy and certificate that insurance upon the life of an employee shall automatically cease upon the termination of employment with the employer in the specified classes of employees.

It was admitted that the plaintiff was under the age of 60 at the time of the institution of this action. But before she would be entitled to recover under the provisions of the policy, she must show that she was totally and permanently disabled by injury or disease on or before the 4th day of May, 1953. There is no contention that the plaintiff is suffering from an injury, but from disease.

The plaintiff was 44 years of age at the time of her discharge. According to the record she was discharged for "willfully abusing her fellow employees, cursing on the job, cursing her fellow employees, failure and refusal to work where she was told to work."

Prior to 4 May, 1953, the plaintiff had been working in the Strip Preparation Department for seven or eight years. Her base pay was $1.10 an hour with a 5c differential for working at night, which made her pay $1.15 an hour. As disclosed by the employment records of R. J. Reynolds Tobacco Company, the plaintiff was away from her job 3.1 hours on 20 April, 1953, when she was excused to attend a funeral. She was out 4 days in March, 1953; the reason for her absence is not disclosed. She lost 6 days in February, 1953, at which time she was sick. She was out 5 days in the week ending 12 January, 1953; cause is not disclosed. She lost no time in December, 1952. During November, 1952, she was out 2 days. During the month of October, 1952, she was out one week on a paid vacation, but lost no time on account of illness. In September, 1952, she was excused for one day, while she lost only one day in August, 1952, and that was on account of sickness in her family. She was given a medical examination by some member of the Tobacco Company's medical staff from time to time, and was last examined by its Director, Dr. R. W. Bunn, on 7 April, 1953. Dr. Bunn testified that he gave her "a pretty

thorough examination." The examination disclosed that her blood pressure was 182/110, and that her condition otherwise was good. He approved her for work and testified that in his "opinion she was able to work."

Dr. H. T. Allen, who examined the plaintiff several times over a period of years and was a witness for the plaintiff, testified that her blood pressure on 13 May, 1953, was 215/160; that the day before the trial in May, 1954, it was 180/110. Dr. Allen was asked whether or not in his opinion the plaintiff was totally and permanently disabled from engaging in any gainful employment on 4 May, 1953, and he answered: "I don't think I am able to." He was then asked: "What is your opinion as to her condition and ability to carry on any gainful occupation on May 4, 1953, and whether or not she would be continuously prevented for life from engaging in any gainful work?" He answered: "Well, now, when a person's blood pressure is that high and running high for some time, it is hard to say just how a person is going to come out. They may be all right one week and a few weeks later may feel bad. Actually, I don't know of anybody who knows just exactly what would be the status of one's condition, to enable him to work. All I can say is that they'd be under a handicap."

The medical testimony also discloses that the plaintiff, in addition to suffering from high blood pressure, was afflicted with asthma.

The record further discloses that at the time the plaintiff was discharged, she asked Mr. Parks, a Line Foreman, if he would give her a job in his home, but, she testified "he didn't give me a job." Thereafter, on 2 June, 1953, she appeared in a hearing before a Claims Deputy for the Winston-Salem District of the North Carolina Unemployment Compensation Commission to determine whether or not she was entitled to receive unemployment benefits. She was put under oath and testified that she was able to work; that she had no physical handicaps or disabilities. When asked if she had anything wrong with her health, she replied, "I have bronchial asthma and that don't bother me but at times, and that is all." She was then asked, "Did that ever keep you away from your job?" Her reply was, "No, sir."

The plaintiff has not been gainfully employed since her discharge from the Tobacco Company.

We think the evidence supports the view that the plaintiff is suffering from asthma and high blood pressure, and did suffer from these ailments for several years before her employment was terminated. Moreover, we think her evidence supports the conclusion that her disability is permanent. However, it does not support the crucial averment which is essential to recovery, to wit: that she was *totally and permanently disabled* from engaging in any gainful employment on or before 4 May, 1953.

Therefore, the ruling of the court below to the effect that the evidence was insufficient to justify submission of the case to the jury, will be upheld. *Johnson v. Assurance Society,* 239 N.C. 296, 79 S.E. 2d 776; *Ford v. Insurance Co.,* 222 N.C. 154, 22 S.E. 2d 235; *Jenkins v. Insurance Co.,* 222 N.C. 83, 21 S.E. 2d 832; *Lee v. Assurance Society,* 211 N.C. 182, 189 S.E. 626; *Carter v. Insurance Co.,* 208 N.C. 665, 182 S.E. 106; *Hill v. Insurance Co.,* 207 N.C. 166, 176 S.E. 269; *Boozer v. Assurance Society,* 206 N.C. 848, 175 S.E. 175; *Thigpen v. Insurance Co.,* 204 N.C. 551, 168 S.E. 845.

Judgment affirmed.