### ADOLPHUS BARTE GREENWOOD v. INTER-OCEAN INSURANCE COMPANY.

(Filed 19 October, 1955.)

**1. Insurance § 34a—**

In construing disability clauses in insurance policies, each policy must be construed in relation to its particular provisions and each claim must be considered in relation to the particular profession or occupation in which the insured was engaged when injured.

**2. Same—**

The policy in suit provided benefits for total disability for a twelve month period, and extended coverage benefits for total disability thereafter if insured had been totally disabled for the entire twelve month period. Insured's evidence tended to show total disability for more than twelve months, but insured had submitted proofs of claim and had accepted partial disability benefits for part of the twelve month period. Insured refused partial disability benefits for the last thirteen days of the twelve month period. *Held:* Nonsuit was properly denied, the evidence being for the jury on the question of insured's right to recover total disability benefits for the last thirteen days of the twelve month period, and total disability benefits under the extended coverage, the proofs of claim and acceptance of partial disability benefits for part of the twelve month period not being conclusive as to the absence of total disability for that period as a predicate for the recovery under the extended coverage.

**3. Same—**

Where a policy provides disability benefits for loss resulting solely from bodily injuries effected directly and independently of all other causes through accidental means, insured is not entitled to recover for disability from a heart condition, which was independent of injuries received in the accident, if the heart condition was a sole or a concurring or cooperating cause of the disability, or one without which such disability would not have resulted.

**4. Insurance § 34e—Where policy contains separate definitions of total disability for separate periods, failure of court to charge that both issues need not be answered alike was prejudicial.**

The policy in suit provided total disability benefits for disability preventing insured from performing any and every duty pertaining to insured's business or occupation, not to exceed twelve consecutive months after the accident, and also for extended total disability benefits beyond the twelve months period if insured was prevented from engaging in any occupation or employment for wage or profit. *Held:* The definition of total disability for the twelve months period differs materially from the definition in the extended total disability coverage, and refers to a different period of time, and therefore where the issue of disability under each coverage is submitted without reference to the time period, and the jury requests instructions as to whether the two issues had to be answered alike, the court should give instructions that it was not required to answer both issues the same, and the failure of the court to do so must be held for prejudicial error.

APPEAL by defendant from *Nettles, J.,* June Term, 1955, of BUN-COMBE.

Action commenced 29 August, 1953, to recover under policy whereby defendant insured plaintiff against "loss resulting solely from bodily injuries effected directly and independently of all other causes through accidental means." The accident indemnity for "Loss OF TIME—TOTAL" is at the rate of $200.00 per month.

Admittedly, the policy was in force on 26 January, 1952, when plaintiff received the injuries on which his claim is based.

Policy provisions for "Accident Indemnities," relevant here, are set forth in Section 2 in these words, viz.:

### "LOSS OF TIME—TOTAL"

"PART A. If 'such injuries' shall within twenty days from date of the accident continuously and totally disable and prevent the Insured from performing any and every duty pertaining to the Insured's business or occupation, and if regularly attended by a legally qualified physician or surgeon, other than the Insured, the Company will pay for the continuous period of loss of time caused thereby, and not to exceed twelve consecutive months, accident indemnity at the rate specified above.

"If 'such injuries' shall wholly and continuously disable the Insured beyond twelve months and prevent the Insured from engaging in any occupation or employment for wage or profit, and if regularly attended by a legally qualified physician or surgeon, other than the Insured, the Company will pay for the continuous period of loss of time caused thereby and not to exceed sixty consecutive months, accident indemnity at the rate specified above."

### "LOSS OF TIME—PARTIAL"

"PART B. Or, if 'such injuries' shall within twenty days from date of the accident or immediately following total disability, disable and prevent the Insured from performing one or more important duty or duties pertaining to the Insured's business or occupation, the Company will pay for the continuous period of loss of time caused thereby not exceeding six consecutive months, two-fifths of the said monthly accident indemnity, provided the Insured is regularly attended by a legally qualified physician or surgeon, other than the Insured, during the full period of such disability.

"The combined payments under parts A and B of this Section shall not be made for more than sixty consecutive months."

Plaintiff was a physician and surgeon in Asheville, specializing in urology. He was assisted in his office by Mrs. Crowder, a medical technician, who also served as nurse and as secretary. Under plaintiff's direction, Mrs. Crowder treated the women patients. She had worked for plaintiff for 24 years, continuously for several years before plaintiff was injured. When injured, plaintiff lacked less than two months of being 64 years of age.

Plaintiff's injury occurred 26 January, 1952. When visiting in Chapel Hill, he fell, when getting out of an automobile. The injury was to his left leg, in and about the knee.

Taken to Asheville, he was treated in a hospital there from 28 January, 1952, until 15 February, 1952, when he went to Hot Springs, Arkansas, for treatments there. Shortly after his return from Hot Springs, he went to his office, on a part-time schedule, from 3 March, 1952, to 8 April, 1952, on which date the disability and pain from his left knee caused him to quit his office entirely. On 23 April, 1952, an operation on his injured knee was performed in Charlotte, N. C., by Dr. Jacobs. Plaintiff remained in the hospital in Charlotte, under treatment for the knee injury, until June 1st. Then he returned to his home in Asheville, but did not go to his office until 18 August, 1952. From that date until early January, 1953, except for ten days, September 5-September 15, discussed below, plaintiff was at his office, on a part-time schedule. He gave up his practice on or about 1 January, 1953; but Mrs. Crowder, who had kept plaintiff's office open continuously until then, stayed on to dispose of his equipment, case histories, etc.

On the basis of proofs of claim filed by plaintiff, defendant paid and plaintiff received and accepted accident benefits as follows: At the rate of $200.00 per month (total loss) from 26 January, 1952, to 3 March, 1952, and from 10 April, 1952, to 18 August, 1952; and at the rate of $80.00 per month (partial loss) from 3 March, 1952, to 10 April, 1952, and from 18 August, 1952, to 6 January, 1953. Defendant tendered to plaintiff an additional payment of $80.00 for the period, 6 January, 1953, to 5 February, 1953, which plaintiff refused.

Plaintiff offered evidence tending to show:

When in his office, during the periods for which he claimed and received partial loss benefits, plaintiff was seriously handicapped in the performance of his professional duties. Unable to operate, he turned down all surgical cases. Before his injury, he examined patients completely. While he attempted to make a few examinations, he could get around only with the assistance of a crutch or cane and with the assistance of Mrs. Crowder. He could not stoop, bend forward, etc., postures necessary in making such examinations, on account of the disability from his knee. His work was limited to consultations and supervisory instructions to his nurse in the treatment of women patients, most of whom were former patients. A few new patients were seen, but any case involving complicated or strenuous treatment was referred to other urologists. Mrs. Crowder was unable to make the physical examinations of patients, not being licensed to do so.

The evidence disclosed these facts relative to plaintiff's income from his profession during the year 1952. January, when he was injured, $690.07; February, $271.00; March, $761.00; April, $416.00; May, $576.00; June, $286.00; July, $217.00; August, $418.00; September, $458.00; October, $634.00; November, $627.00; December, $529.00. These items total $5,883.07. Included in the indicated collections are items for work previously done and for services performed by Mrs. Crowder. As indicated, plaintiff's office was kept open during all of 1952. In plaintiff's absence, Mrs. Crowder was in charge. Plaintiff's total expenses for 1952 amounted to $6,472.42, which includes some items of personal expense as well as the items of professional and office expense.

On 5 September, 1952, on account of an acute illness, plaintiff entered a hospital. His testimony tends to show that Dr. Hensley, his physician for this illness, intimated to him in late December, 1952, and advised him explicitly in January, 1953, that he had a cardiovascular condition and should take a complete rest. Then plaintiff quit his practice and closed his office.

The evidence consists wholly of that offered by plaintiff.

Other facts pertinent to decision will be stated in the opinion.

Plaintiff's action was to recover $1,400.00, plus interest, to wit, total loss indemnity from 6 January, 1953, to 3 August, 1953, seven thirty-day periods.

The case was submitted to the jury. The issues and answers thereto were as follows:

"1. Has the plaintiff as the direct and independent result of his injury of January 26, 1952, been prevented from performing any and every duty pertaining to his business or occupation? Answer: Yes.

"2. Has the plaintiff as the direct and independent result of his injury of January 26, 1952, been wholly and continuously prevented from engaging in any occupation or employment for wage or profit? Answer: Yes.

"3. What amount, if any, is the plaintiff entitled to recover of the defendant? Answer: $1400.00."

Upon the verdict, judgment was awarded plaintiff for $1,400.00, with interest from the respective due dates of the monthly payments, and costs. Defendant appealed, assigning errors.

*Harkins, Van Winkle, Walton & Buck for plaintiff, appellee.*
*Williams & Williams for defendant, appellant.*

BOBBITT, J. "Accident Indemnities," Section 2, PART A, quoted above, deals with "LOSS OF TIME—TOTAL." Under the *first* paragraph

of said PART A, accident indemnity is payable thereunder at the rate of $200.00 per month, for a period not exceeding twelve months, if plaintiff, "resulting solely from bodily injuries effected directly and independently of all other causes through accidental means," is continuously and totally disabled and prevented from performing any and every duty pertaining to *his* business or occupation. Plaintiff alleged that the policy contained this provision. He alleged further that he had been so disabled from 26 January, 1952, on account of his knee injury.

Under the *second* paragraph of said PART A, if the facts are such as to entitle the insured to the total loss indemnity for the first twelve months under the provisions set out in said *first* paragraph, then the accident indemnity at the rate of $200.00 per month will be continued for an additional maximum period of 48 months if "such injuries" shall wholly and continuously disable the insured and prevent him from engaging in any occupation or employment *for wage* or *profit*. This provision will be referred to herein as the "extended total loss coverage." Plaintiff did not allege that the policy contained this provision. Nor did he allege that he was wholly and continuously disabled and prevented from engaging in *any* occupation or employment *for wage* or *profit*. At the close of plaintiff's evidence, by leave of court and over defendant's objection, plaintiff amended his complaint so as to allege this policy provision. In this Court, he moves to amend further by alleging that he was wholly and continuously disabled and prevented from engaging in *any* occupation or employment for *wage* or *profit*. Even so, the court below submitted the second issue, apparently upon the assumption that such allegation had been made.

The disability defined in the *first* paragraph of PART A, sufficient to require payment of the total loss indemnity for the first twelve months from the date of accident, differs materially from that defined in the *second* paragraph of PART A, which sets forth the conditions under which the "extended total loss coverage" is payable.

Counsel do not cite, nor have we discovered, a decision of this Court dealing with a disability provision substantially in accord with that set forth in the *first* paragraph of PART A. This provision relates to the insured's ability personally to perform the duties of his profession. Evidence of income when engaged on a part-time schedule at his office is relevant only as it may bear upon whether plaintiff was in fact totally disabled from performing personally "any and every duty" pertaining to his profession.

General discussions of what constitutes "total disability" may be found in 29 Am. Jur., Insurance, sec. 1161 *et seq.;* 45 C.J.S., Insurance, sec. 898; Richards on Insurance, 5th Ed., secs. 237 and 238; Appleman,

Insurance Law and Practice, sec. 671 *et seq.* The cases are legion. Annotations: 37 A.L.R. 151; 41 A.L.R. 1376; 51 A.L.R. 1048; 79 A.L.R. 857; 98 A.L.R. 788.

Suffice it to say: each policy must be construed in relation to its particular provisions and each claim must be considered in relation to the particular profession or occupation in which the insured was engaged when injured.

The policy under consideration, by its terms, indicates plainly the distinction between "LOSS OF TIME—PARTIAL" and "LOSS OF TIME—TOTAL." In the former, the disability must be such as to prevent the insured from performing *one or more important* duty or duties of his occupation. In the latter, the disability must be such as to prevent the insured from performing *any and every* duty of his occupation. Construed together, the indemnity for "LOSS OF TIME—TOTAL" is payable when the insured is disabled to such extent that he cannot perform *any important* duty of his profession.

The evidence, considered in the light most favorable to plaintiff, tends to show beyond question that plaintiff's disability on account of his knee injury prevented him from performing one or more important duty or duties of his occupation. Moreover, we think such evidence sufficient for submission to the jury on the issue as to whether he was disabled during the first twelve months from the date of the accident to such extent that he could not perform *any important* duty of his profession. The inference may be drawn that the plaintiff, when he went to his office during this period, simply indulged the false hope that he would recover sufficiently from his knee injury to resume his practice as a physician and surgeon; but that, after making an honest trial, he found that he was totally incapable of performing personally any important duty of his profession.

The fact that, during such times, he submitted proofs of claim, accompanied by the certificate of a doctor, to the effect that his then disability was partial, and accepted the partial loss benefits based on such proofs of claim, is not conclusive as to plaintiff's actual and true status. All relevant evidence, including such proofs of claim, was for consideration by the jury.

It must be borne in mind that plaintiff has received either total loss or partial loss benefits for the entire period from 26 January, 1952, to 6 January, 1953. He makes no further claim for that period. His claim now is for total loss benefits commencing 6 January, 1953. The evidence was sufficient for submission to the jury, certainly in relation to the remainder of the period of twelve months from his accident on 26 January, 1952. Hence, defendant's motion for judgment of nonsuit was properly overruled.

Since there must be a new trial, for reasons stated below, we need not consider the sufficiency of plaintiff's evidence, even if predicated on sufficient allegation, for submission on the issue as to whether he comes within the "extended total loss coverage." The evidence relevant to this issue may be different upon the second trial.

In relation to such "extended total loss coverage," attention is called to the fact that this Court has considered frequently disability provisions substantially in accord with those set forth in the *second* paragraph of PART A. A number of such cases are cited by *Winborne, J.,* in *Ingram v. Assurance Society,* 230 N.C. 10, 51 S.E. 2d 903, and by *Denny, J.,* in *Drummonds v. Assurance Society,* 241 N.C. 379, 85 S.E. 2d 338. The general rule applicable is stated by *Brogden, J.,* as follows: "The reasoning of the opinions seems to indicate that engaging in a gainful occupation is the ability of the insured to work with reasonable continuity in his usual occupation or in such an occupation as he is qualified physically and mentally, under all the circumstances, to perform substantially the reasonable and essential duties incident thereto. Hence, the ability to do odd jobs of comparatively trifling nature does not preclude recovery." *Bulluck v. Insurance Co.,* 200 N.C. 642, 158 S.E. 185. Thus, recovery has been denied to an insured who, though suffering from a permanent and serious disability, continues to work at a gainful occupation. *Ford v. Insurance Co.,* 222 N.C. 154, 22 S.E. 2d 235. Under the *second* paragraph of PART A, the test is whether the insured is wholly and continuously disabled to such extent that he cannot engage in *any* occupation or employment for *wage* or *profit.*

There is evidence that plaintiff quit his office in January, 1953, withdrawing completely from any further attempt to practice his profession, on account of his knee injury. On the other hand, there is evidence that plaintiff so withdrew from his practice on account of his heart condition. There is no evidence that the heart condition resulted in any degree from the knee injury. (It is noted that the policy here under consideration contained provisions for "Sickness Indemnities," not involved in this action, including a special provision whereby insured waived benefits for disability resulting from "any deseases (*sic*) of the heart and/or complications arising therefrom."

To recover on account of disability, whether that defined in the *first* or in the *second* paragraphs of PART A, the knee injury alone must have been such as to cause such disability. If such disability was caused solely by plaintiff's heart condition, or if plaintiff's heart condition was a concurring and cooperating cause, without which such disability would not have resulted, plaintiff cannot recover. *Penn v. Insurance Co.,* 158 N.C. 29, 73 S.E. 99; *S. c.,* 160 N.C. 399, 76 S.E. 262.

In the trial below the first issue was germane only as to the period of twelve months beginning 26 January, 1952. The second issue, assuming a sufficient allegation to warrant its submission at all, was germane only as to the period of "extended total loss coverage," which began, if at all, upon the expiration of the first twelve months. However, the first and second issues as submitted related to the identical period, to wit, from 26 January, 1952.

After deliberating for a time, the jury returned for further instructions, when, as shown by the record, the following occurred:

"JUROR: We can't agree on whether the issues all have to be answered 'yes' or all 'no'?

"COURT: Gentlemen, I can't tell you that.

"JUROR: What I mean, do you have to answer them all one way?

"COURT: Just have a seat.

"Members of the jury, the plaintiff, with reference to the first and second issues, argues and contends that as a result, and as a direct and independent result of his injury on January 26, that he has been prevented from performing any and every duty pertaining to his business or occupation as a physician or medical doctor; and that as to the second issue that he has also, by reason of the direct and independent result of his injury alleged to have occurred on January 26, 1952, been wholly and continuously prevented from engaging in any occupation or employment for wage or profit, and the burden of those two issues is upon the plaintiff to satisfy you from the evidence, and by its greater weight, and if you are so satisfied from the evidence, and by its greater weight, that by reason of his injury that he was prevented from performing any and every duty pertaining to his business, and that he was wholly and continuously prevented from engaging in any other occupation for a wage or profit, and you so find from the evidence and by its greater weight, the burden being upon the plaintiff to so establish, then the Court charges you it would be your duty to answer both issues YES. If you are not so satisfied, it would be your duty to answer the issues No.

"As I have said, the burden is upon the plaintiff to satisfy you from the evidence and testimony in the case, and by its greater weight, that he was prevented from performing any and every duty pertaining to his business or occupation by reason of the direct and independent result of the injuries alleged to have been sustained on January 26, 1952, and, likewise, that he was prevented by the injuries from engaging as a direct and independent result of the injury from engaging in any other occupation or employment for wage or profit.

"Now, is there anything else that I can give you any additional instructions about, gentlemen?

GREENWOOD *v.* INSURANCE CO.

"JUROR: What we are undecided on is whether you can answer the first one one way and the next one another way?

"COURT: Well—(interrupted).

"JUROR: We understood that you said to answer them all 'yes' or all 'no.'

"COURT: No, sir, I didn't say that, gentlemen. The only thing I can tell you is: that if you find from the evidence, and by its greater weight, that as a direct and independent result of the alleged injuries that the plaintiff was prevented from performing any and every duty pertaining to his business as a doctor, and that as the direct and independent result of his injury on January 26, 1952, that he was continuously and wholly prevented from engaging in any other occupation for wage or profit,— if you find those facts from the evidence and by its greater weight, the burden being on the plaintiff to so satisfy you, you would answer the first and second issue YES, otherwise you would answer it No." ·

We apprehend that these instructions did not satisfactorily answer the juror's pertinent inquiry, namely, whether the jury was required to answer both the first and second issues the same way, either "yes" or "no." The difficulty may be attributed, at least in part, to the fact that these issues, as pointed out above, should have related to different and defined periods. But, in relation to the issues submitted, had the jury seen fit to answer the first issue "no," it should not have considered the second issue at all; and had the jury seen fit to answer the first issue "yes," then the second issue was for its consideration to be answered either "yes" or "no" according to its findings. The jury was not required to answer both issues the same way, either "yes" or "no," and should have been instructed as indicated.

We note again that to recover during the initial twelve months plaintiff was required to establish only that he was disabled, "from performing any and every duty pertaining to the Insured's business or occupation," as provided in the *first* paragraph of PART A, while recovery for the immediately following period of "extended total loss coverage" required that the plaintiff then be disabled to such extent that he could not engage "in any occupation or employment for wage or profit."

In our opinion, the confusion inherent in the issues submitted, together with the instructions given in response to the juror's inquiry, resulted in a failure to submit correctly to the jury for their determination the issues upon which plaintiff's right to recover depends. Defendant, by proper exceptive assignments of error, challenged the submission of each issue as well as the quoted instructions.

Plaintiff's motion in this Court for leave to amend his complaint is denied, without prejudice to plaintiff's right hereafter in the court below to make the same motion or other motion in respect of amend-

ment of his pleadings. If defendant desires to amend its answer, it may move for leave to do so hereafter in the court below.

For the reasons stated, a new trial is awarded. Questions posed by other assignments of error may not arise when the cause is tried again.

New trial.