EDWARD C. SHANAHAN v. SHELBY MUTUAL INSURANCE CO.

No. 7326SC524

(Filed 1 August 1973)

1. **Insurance § 38— total disability — inability to perform every duty pertaining to occupation**

Under a provision of an insurance policy providing benefits for total disability if, for a period of 52 weeks from the commencement of disability, "it shall continuously prevent the insured from performing every duty pertaining to his occupation," the test of total disability is whether the insured is disabled to such extent that he cannot perform *any important* duty of his profession.

2. **Insurance § 38— total disability — inability to perform any important duty of occupation — sufficiency of evidence**

Plaintiff's evidence was sufficient to require submission to the jury of an issue as to whether plaintiff was totally disabled during the 52-week period after an automobile accident from performing any important duty of his occupation as a sales representative of a sportswear manufacturer where it tended to show that plaintiff's duties included unpacking, tagging, hanging and pressing each garment before showing it to a prospective customer, that plaintiff suffered spinal injuries in the accident which made him physically unable to carry the bags containing the samples or to prepare and display the merchandise, and that pain made it impossible for him to concentrate so as to make the sales and write the orders; evidence that plaintiff on one occasion visited his showroom where sportswear was being shown, that he attended a sales meeting in Las Vegas, and that he commenced traveling in his sales territory with a junior salesman but was in severe pain and performed no duties on such trips

would support the inference that plaintiff indulged the false hope that he would recover sufficiently to resume his occupation but that he found he was incapable of doing so and would not preclude submission of the case to the jury.

**3. Insurance § 38— total disability — inability to engage in any occupation**

Under a provision of an insurance policy providing benefits for total disability if, after a period of 52 weeks from commencement of the disability, "it shall continuously prevent the insured from engaging in any occupation or employment for wage or profit," the test of total disability is whether the disability renders the insured unable to work with reasonable continuity in his usual occupation or in such an occupation as he is qualified physically and mentally, under all the circumstances, to perform substantially the reasonable and essential duties incident thereto.

**4. Insurance § 38— total disability — inability to engage in any occupation — sufficiency of evidence**

Plaintiff's evidence was sufficient to require submission of an issue to the jury as to whether plaintiff was totally disabled from engaging in any occupation or employment for wage and profit from and after the passage of 52 weeks from commencement of the disability suffered in an automobile accident where it tended to show that plaintiff, who had been a sales representative for a sportswear manufacturer, suffered injuries which caused a 40% permanent disability in his right arm, a 60% permanent disability in his left arm, a 20% permanent disability in his neck and some permanent disability in his lower back, that pain resulting from plaintiff's injuries would limit his tolerance for standing, sitting and walking and would necessitate that he take frequent rest periods, and that plaintiff could engage only in an occupation requiring minimal physical or mental exertion.

APPEAL by plaintiff from *Snepp, Judge,* 19 February 1973 Session of Superior Court held in MECKLENBURG County.

Plaintiff, Edward C. Shanahan, instituted this action to recover total disability benefits under the terms of an automobile insurance policy issued by defendant, Shelby Mutual Insurance Co. Plaintiff alleged that on 29 July 1970, he was injured in an automobile accident and that as a result of injuries sustained therein, he has been totally disabled within the meaning of the terms of the policy of insurance issued by defendant. Plaintiff contends that he:

" . . . is entitled to receive disability payments at the rate of $50.00 per week from July 29, 1970; that the Defendant has paid to the Plaintiff the $50.00 per week payments provided in the policy for only nineteen (19) weeks and that the Defendant is indebted to the Plaintiff for the payment of $50.00 per week from December 8, 1970, to the

date of filing of this action, together with $50.00 per week during the life of the Plaintiff or so long as his disability shall continue and that the Defendant is indebted to the Plaintiff in the sum of at least $2,600.00 plus $50.00 per week hereafter."

Defendant filed answer admitting that (1) plaintiff was involved in an automobile accident on 29 July 1970 and "received injuries that disabled him for a period of time" and (2) on or about 3 March 1964 defendant issued to plaintiff its policy number AF 5202-853 containing a section entitled "Automobile Death and Specific Disability Benefits" which provides:

"COVERAGE C—TOTAL DISABILITY: To pay weekly indemnity at the rate stated in the schedule for the period of continuous total disability of the insured which shall result directly and independently of all other causes from bodily injury caused by accident and sustained by the insured while in or upon or while entering into or alighting from, or through being struck by, an automobile, provided (1) such disability shall commence within twenty days after the date of the accident, and (2) any disability during the period of fifty-two weeks from its commencement shall be deemed total disability only if it shall continuously prevent the insured from performing every duty pertaining to his occupation and (3) any disability after said fifty-two weeks shall be deemed total disability only if it shall continuously prevent the insured from engaging in any occupation or employment for wage or profit."

The record discloses that on 2 February 1973, pursuant to Rule 68 of the North Carolina Rules of Civil Procedure, defendant made an offer "to allow judgment to be taken against the defendant in the sum of One Thousand Dollars ($1,000.00)." Plaintiff apparently refused this offer of judgment.

On 27 February 1973, the court entered judgment, which, except where quoted, is summarized as follows:

At the close of plaintiff's evidence, defendant moved, pursuant to G.S. 1A-1, Rule 50, for a directed verdict, and prayed in the alternative (1) that plaintiff recover nothing of defendant; (2) that plaintiff recover nothing of defendant after 20 February 1971; or (3) that plaintiff recover nothing of defendant after 15 March 1971. Defendant premised this motion upon its allegation that plaintiff's own evidence demonstrated that

he was not totally disabled, according to the terms of the insurance policy, after those respective dates. The trial court was of the opinion that an issue of fact existed as to whether "plaintiff was continuously prevented by reason of his disability from performing every duty pertaining to his occupation between the dates of December 8, 1970, and March 15, 1971." Thereupon defendant:

" . . . offered in open court to submit to judgment for the amount, with interest at six percent (6%) per annum under the terms of the policy of insurance in question, due the plaintiff if the plaintiff were continuously and totally disabled as defined in the policy through March 15, 1971, a period of time fourteen (14) weeks longer than the period for which the plaintiff had previously been paid by the defendant . . . . "

The trial court then ordered, adjudged and decreed that plaintiff recover of defendant $786.75 "being fourteen (14) weeks at Fifty Dollars ($50.00) per week, with interest at six percent (6%) per annum through February 28, 1973, calculated under the terms of the payment provisions of the insurance policy in question" and dismissed the remainder of plaintiff's claim for relief. Plaintiff appealed.

*Fairley, Hamrick, Monteith & Cobb by S. Dean Hamrick for plaintiff appellant.*

*Carpenter, Golding, Crews & Meekins by James P. Crews for defendant appellee.*

HEDRICK, Judge.

This appeal presents the question of whether the evidence, when considered in the light most favorable to plaintiff, is sufficient to require submission to the jury the issue of whether plaintiff was totally disabled, as defined in the insurance policy, from and after 15 March 1971.

The material evidence offered by plaintiff tends to show the following:

Plaintiff was the exclusive "sales representative" for Jantzen, Inc., in an area covering western North Carolina and a portion of western Virginia. Plaintiff testified that he was responsible for the promotion and advertising of ladies' sportswear and swim suits in his territory and received from Jantzen

at least one sample of each garment manufactured by the ladies' wear division. Plaintiff's duties included unpacking, tagging, hanging and pressing of each garment before showing it to a prospective customer. He testified:

> "We used a special type of hanger which we could put all types of information on so that it was possible to glance at any one of the five hundred items and immedicately [*sic*] to be able to adequately describe it to the customers."

> "After hanging the samples in the manner that I have described, it was necessary to put them in the bag or cases and physically load them into an automobile and then drive them where I was about to display them."

After the accident in Virginia on 29 July 1970, plaintiff was hospitalized in Roanoke until about 21 August 1970, when he was removed by "hospital plane" and taken to Charlotte.

Dr. Harold W. Tracy, an expert in the field of orthopedic surgery, examined plaintiff in the Charlotte Memorial Hospital on 24 August 1970. Dr. Tracy testified that plaintiff:

> " . . . had a fracture dislocation of the fourth upon the fifth cervical vertebra. That is in the neck. And a compression fracture as well of the third lumbar vertebra, which is down in the low back. There has also been a dislocation of the left shoulder which had been reduced, and he had residual neurological loss in both arms as a result of his neck injury."

Dr. Tracy treated plaintiff until 8 May 1972 and testified that although his fractures and spinal injuries "went on to satisfactory healing," plaintiff was left with "continuing discomfort in both areas, weakness and tenderness, especially aggravated by fatigue, and he was left with some permanent residual neurologic loss in both arms; that is, weakness and numbness. By neurologic I mean weakness that involves the nerve structure." Dr. Tracy testified that by November, 1971, plaintiff "had reached a plateau of improvement" and estimated that plaintiff had a 40% permanent residual disability in his right arm, a 60% permanent residual disability in his left arm, a 20% permanent residual disability in his neck, and some permanent residual disability resulting from the compression fracture in the low back. In the opinion of Dr. Tracy, the pain suffered by plaintiff as a result of these injuries would affect plaintiff's ability to

work by limiting his tolerance for standing, sitting and walking, and necessitating that plaintiff take frequent rest periods. Dr. Tracy did not feel that plaintiff's condition would improve in the future.

Dr. R. W. Gaul, another expert in the field of orthopedic surgery, examined plaintiff on 11 April 1972. He testified:

"On examination, I saw a middle aged white male, gross loss of motion in all planes of the cervical spine and this motion was painful at the extremes. This means both bending and rotation and lateral and side to side bending of the neck. The left shoulder was partially dislocated, tenderness of the muscle about this and the muscles of the left shoulder were wasted. There was a rather marked weakness of all this muscle group that extends the elbow, weak biceps that bends it, only a fair grip. Fair means just able to work against gravity. * * * Examination of the lumbar spine revealed stiffness and bending to one side. The motion was almost nonexistent. I was able to get almost nothing in the way of motion in the low back area. Examination of reflexes revealed weakness in all the reflexes in the upper extremities, normal in the lower. Stroking of the foot tended to rule out any serious spinal cord damage."

It was Dr. Gaul's opinion that plaintiff could engage only in an occupation requiring minimal physical or mental exertion and testified:

"The condition I found would impede such physical action as the unpacking of clothing samples and pressing them. I would certainly think his condition would tend to impede his ability to carry sample cases which weighed more than ten or fifteen pounds."

Dr. Gaul anticipates no further improvement in plaintiff's condition.

Plaintiff testified that on 8 December 1970 he "had my wife drive me over to my showroom at the Charlotte Merchandise Mart where a junior salesman [Craig Ficklin], who had been supplied by the company, was showing the line. I was interested in seeing what he was doing, so forth. I stayed there for possibly half an hour or so. I had to leave." In February, 1971, plaintiff flew to Las Vegas to attend Jantzen's Fall sales meeting.

Commencing about 15 March 1971, plaintiff began riding with Ficklin in the sales area. Ficklin stated that during these trips, plaintiff appeared to be "in severe pain" and would frequently fall asleep in the automobile. He stated that plaintiff was only able to raise his right arm "a little bit" and that plaintiff "couldn't raise his left arm even up to the level of his shoulder." Ficklin testified that he did all the driving, handled all the samples, wrote the orders, prepared the line for show, made all the telephone calls and "everything else concerned."

Plaintiff testified that he was physically unable to perform the duties of his occupation in that he could not carry the bags containing the samples, he could not prepare and display the merchandise, and the pain made it impossible for him to concentrate so as to make the sales and write the orders.

On 27 May 1971, plaintiff's employment with Jantzen was terminated and he has not been reemployed.

In determining what constitutes total disability within the terms of an insurance policy, "each policy must be construed in relation to its particular provisions and each claim must be considered in relation to the particular profession or occupation in which the insured was engaged when injured." *Greenwood v. Insurance Co.*, 242 N.C. 745, 89 S.E. 2d 455 (1955) (hereafter cited as *Greenwood*).

[1] The insurance policy under consideration employs a two stage definition of total disability. Under clause 2 of Coverage C, a disability is total, if, for a period of fifty-two weeks from the commencement of disability, "it shall continuously prevent the insured from performing *every* duty pertaining to *his* occupation." (Emphasis added.) The policy of insurance in *Greenwood, supra,* also employed a two stage definition of total disability. Under the first stage, a disability was defined as total, if, for a period of twelve consecutive months after the injury, it prevented the insured "from performing *any and every* duty pertaining to the *Insured's* business or occupation." (Emphasis added.) Justice Bobbitt, now Chief Justice, writing for the North Carolina Supreme Court in *Greenwood* stated that the test of total disability under the first stage definition was whether "the insured is disabled to such extent that he cannot perform *any important* duty of his profession."

[2] We hold that when the evidence is considered in the light most favorable to plaintiff, it is sufficient to require submission

Shanahan v. Insurance Co.

to the jury the issue of whether plaintiff was totally disabled during the fifty-two week period after the accident from performing any important duty pertaining to his occupation. The inference may be drawn that plaintiff, when he visited the Merchandise Mart on 8 December 1970, flew to Las Vegas in February, 1971, and commenced traveling in his sales territory with Craig Ficklin on 15 March 1971, "simply indulged the false hope that he would recover sufficiently from his . . . injury to resume his practice . . . but that, after making an honest trial, he found that he was totally incapable of performing personally any important duty of his profession." *Greenwood, supra,* at 751. These activities of plaintiff would not *ipso facto* necessitate directing a verdict for defendant or preclude submission of this case to the jury. Such activities are circumstances for the jury to consider, along with other evidence, in determining whether the plaintiff is totally disabled within the meaning of the insurance policy.

[3] The second stage of the definition of total disability is contained in clause 3 of Coverage C of the policy which provides:

> "[A]ny disability after said fifty-two weeks shall be deemed total disability only if it shall continuously prevent the insured from engaging in *any occupation or employment for wage or profit.*" (Emphasis added.)

The counterpart of this definition in *Greenwood* also defined a disability as total if it "shall wholly and continuously disable the Insured beyond twelve months and prevent the Insured from engaging in *any occupation or employment for wage or profit.*" (Emphasis added.) The test enunciated by the court in *Greenwood* as applicable to this definition was "whether the insured is wholly and continuously disabled to such extent that he cannot engage in *any* occupation or employment for *wage* or *profit.*" The North Carolina Supreme Court expounded on this test by quoting with approval the following statement from *Bulluck v. Insurance Co.,* 200 N.C. 642, 158 S.E. 185 (1931):

> "[E]ngaging in a gainful occupation is the ability of the insured to work with reasonable continuity in his usual occupation or in such an occupation as he is qualified physically and mentally, under all the circumstances, to perform substantially the reasonable and essential duties incident thereto. Hence, the ability to do odd jobs of comparatively trifling nature does not preclude recovery."

[4]   We hold that the evidence is sufficient to require submission to the jury the issue of whether plaintiff was totally disabled, from and after 29 July 1971, from engaging in any occupation or employment for wage or profit.

The case of *Taylor v. Casualty Co.*, 14 N.C. App. 418, 188 S.E. 2d 728 (1972), cited by defendant is not controlling, since there the evidence disclosed that the plaintiff was actually working and performing "all or substantially all of the duties of his occupation" when he was discharged "for cause." There the court said:

> "There is no construction of the evidence in this case which would permit a jury to find that plaintiff's heart disease prevented him from performing 'each and every duty' of his job."

However, the evidence in the present case will permit a construction by the jury that the plaintiff was totally disabled within the meaning of the policy from the date of the accident until the date of the trial.

For the reasons stated, the judgment is reversed and the case is remanded for a

New trial.

Judges BROCK and VAUGHN concur.