ALBERT V. MEDLIN v. THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.

(Filed 19 November, 1941.)

**1. Insurance § 34a—**

An insured, even though permanently disabled, is not totally disabled within the meaning of a disability clause in a life insurance policy if he is able to engage with reasonable continuity in his usual occupation or in any occupation that he is physically and mentally qualified to perform substantially the reasonable and essential duties incident thereto.

**2. Insurance § 34e—Insured's own evidence held to show that he was not totally disabled within meaning of disability insurance.**

In this action by insured to compel insurer to continue to pay him disability benefits under the provisions of the policy of insurance in suit, insured's own evidence, considered in the light most favorable to him, *is held* to show that notwithstanding insured's admitted permanent disability during the period in question, insured performed executive and supervisory duties in connection with his fireworks and trucking businesses, that his activities resulted in substantial profit and amounted to a great deal more than "odd jobs of a comparatively trifling nature" and therefore insured was not totally disabled within the terms of the disability clause in suit, and insurer's motion to nonsuit should have been allowed.

APPEAL by defendant from *Pless, J.,* at February Term, 1941, of WAKE.

On 6 November, 1922, the defendant issued to the plaintiff a life insurance policy for $4,000.00, containing, *inter alia,* the following provision: "If the Insured, after payment of premiums for at least one full year, shall, before attaining the age of sixty years and provided all past due premiums have been duly paid and this Policy is in full force and effect, furnish due proof to the Company at its Home Office either (a) that he has become totally and permanently disabled by bodily injury or disease, so that he is, and will be, permanently, continuously and wholly prevented thereby from performing any work for compensation, gain or profit, and from following any gainful occupation, or (b) . . . The Company will, during the continuance of such diability, waive payment of each premium as it becomes due, commencing with the first premium due after approval of said due proof. . . . The Company will, during the continuance of such disability, pay to the Insured a monthly income at the rate of ten dollars for each one thousand dollars of the face amount of this Policy."

The defendant waived the premiums due on and paid the plaintiff the permanent and total disability benefits provided by the policy from 1932 to 1 January, 1939, when it notified plaintiff that it would no longer

waive premiums or pay benefits. Whereupon, the plaintiff instituted this action against the defendant to compel the further waiver of premiums and a continuation of the payment of the disability benefits.

The cause was submitted to a jury upon the following issues: "Has the plaintiff, since January 1st, 1939, been totally and permanently disabled by bodily injury or disease so that he is and will be permanently, continuously and wholly prevented thereby from performing any work for compensation, gain or profit and from following any gainful occupation? 2. What amount, if any, is the plaintiff entitled to recover of the defendant?"

The jury answered the first issue "Yes," and the second issue "Payment in full, with interest." There was an agreement between the parties that in the event the first issue should be answered in the affirmative the second issue should be answered as it was answered, and in the event the first issue should be answered in the negative the second issue should be answered nothing. There was no controversy as to the amount involved, the sole question being as to whether the plaintiff was entitled to recover any amount whatsoever.

From a judgment for the plaintiff predicated upon the verdict and the agreement the defendant appealed, assigning errors.

*Bunn & Arendell for plaintiff, appellee.*
*Pou & Emanuel and Louis W. Dawson for defendant, appellant.*

SCHENCK, J. The sole question presented by the exceptive assignments of error is as to whether the court erred in refusing to allow the defendant's motion to dismiss the action or for judgment as in case of nonsuit duly lodged when the plaintiff had introduced his evidence and rested his case and renewed when all the evidence on both sides was in. C. S., 567.

The question presented involves the interpretation of and the application to the evidence in the case of the clause in the policy which reads: "that he (the insured) has become totally and permanently disabled by bodily injury or disease, so that he is, and will be, permanently, continuously and wholly prevented thereby from performing any work for compensation, gain or profit, and from following any gainful occupation."

The appellant admits in its brief that there is evidence of the insured's being "permanently disabled" but denies that there is evidence of his being totally disabled, its brief reading as follows: "It may be frankly conceded at the outset that no attempt was made to controvert the plaintiff's testimony as to his physical condition; but the defendant contended that whether or not the alleged physical disability did exist, the plaintiff's own evidence and that of his witnesses demonstrated conclusively that

the plaintiff was not only not prevented from performing work for gain or profit, but that he did in fact regularly perform such work and did engage in various gainful businesses; and therefore that he was not entitled to any recovery under said disability provisions."

So that the question ultimately left for us is was there sufficient evidence to be submitted to the jury upon the issue of the insured's (the plaintiff) being totally disabled so that he is, and will be, wholly prevented from performing any work for compensation, gain or profit, and from following any gainful occupation.

The testimony of the plaintiff himself when construed in the light most favorable to him tends to show that in 1919, while a traveling shoe salesman, he conceived the idea of a fireworks business as a side line, and that he opened up a fireworks stand on the side of the highway; that in 1922 he extended this business by engaging in the wholesale of fireworks under the trade name of Dixie Fireworks Company; that the plaintiff married in 1925; that he continued his shoe sale business and his fireworks business from 1922 till 1929; that in 1929 he discovered his eyesight was failing and gave up his shoe sale business; that he bought a local insurance business in Zebulon and operated it at a loss for a year and a half and sold it out; that in 1932 he filed a claim with the defendant company alleging total and permanent disability, and commencing in May, 1933, the company paid him disability benefits through December, 1938, when it ceased such payments; that the fireworks business increased from year to year, that he did not attend to the office work, as this was done by Mrs. Medlin, that he "directed the employees around there and told them what to do," and that he "hired and fired people around the Dixie Fireworks Company," that both he and his wife signed the checks for the business, that the employees were paid by him and Mrs. Medlin, and she and he, who owned the business, shared in the profits; that he does his banking with the Peoples Bank & Trust Company, and from year to year he has given financial statements to it, and negotiated with it about borrowing money and that he and his wife signed the notes given to the bank; that in 1935 his wife and he serviced stands on a 50-50 basis, that is, they supplied the merchandise and shared the profits equally with the persons operating the stands; that his business on this basis continued to grow, "so much so that I engaged lobbyists in the 1937 Legislature to oppose fireworks bills," and that he came to Raleigh and made a personal appearance before the committee in opposition to the fireworks bills; in 1937 he signed a radio contract with WPTF, and gave a check for $100.00 for radio advertising, that either he or his wife signed radio contracts with Rocky Mount and Charlotte; that in 1937 he went north for several weeks in connection with the sale of fireworks and opened stands for the sale thereof in Washington and

southern Maryland; there the salesman, Mr. Tayman, sold the goods on commission basis and "at the close of the season he brings the money in and gives it to Mrs. Medlin while I am there, I don't leave Maryland and Washington until that season is ended, and we have settled with Mr. Tayman; and that business is in the name of the Dixie Fireworks Company of Zebulon"; that he got in touch with Mr. Tayman and put in a little place at Cottage City, Maryland, in 1936 or 1937; that he was also up there at Cottage City, Maryland, in 1938, and in 1938 he went to both New York and Boston to see fireworks companies; "in 1938 we shipped some fireworks out of Zebulon into other States, into Ohio principally. The way I got orders from way up there was they sent samples, Philip knew these people and that was Philip Seigelof's business. . . . Philip Seigelof is an Italian; I think I first met him at Havre de Grace, Maryland. I am not sure whether this was in 1937 or 1938. He was introduced to me as a fireworks manufacturer. . . . Up until the time I met Seigelof all we did was to job fireworks; we bought them and sold them; and when I met Seigelof I got the idea of having fireworks manufactured at Zebulon on our place of business. . . . After he had been there awhile I built a number of small one-room houses to accommodate the manufacturing for Seigelof, these were built on my property in or near Zebulon. . . . Mr. Pierce was an employee of Dixie Fireworks Company, and he had orders from me and Mrs. Medlin to get whatever Seigelof needed, and it was charged to him, and the Dixie Fireworks paid for it. . . . The arrangement with Mr. Seigelof continued until his death. I helped manufacture or helped finance that manufacturing business. I am familiar with the catalogues. About the material that went in there, Mrs. Medlin stuck them things on the page and Mr. Pierce did most of the writing; and I knew that most of it was going in. Mrs. Medlin and I both told him what to write. In the catalogue it reads: 'We are the largest distributors of fireworks in the entire South.' I think we are the largest distributor of fireworks in the entire South. . . . In addition to that we imported fireworks from China"; that in 1938 he had a warehouse on the Washington-Baltimore Boulevard at Cottage City, Maryland, and he spent two or three weeks there around the 4th of July season 1938, that he purchased a license for the business there which was paid for by him and was issued in his name; that he has been "up there," Cottage City, Maryland, in 1939, and every year since for about three weeks during the 4th of July season, and paid licenses to carry on the fireworks business, that he was finally required to pay both wholesale and retail license to Cottage City; in 1939 he signed a contract with the National Fireworks Company of Boston in the name of the Dixie Fireworks Company for $2,254.00 worth of fireworks; that in 1940 he came to Raleigh and rented a room

and displayed an advertisement in the lobby of the Sir Walter Hotel and negotiated unsuccessfully for fireworks business incident to the State Fair, and repeated this experience in 1941; that in 1935 he signed a financial statement to the bank showing his net worth to be $26,875.00, in 1936 he signed a similar statement showing his net worth to be $28,700.00, in 1938 he signed a similar statement showing his net worth to be $37,073.82, and in 1939 he signed a similar statement showing his net worth to be $46,365.25; that he submitted all of these statements to the bank from time to time when he was trying to borrow money from it, and that they were correct.

The testimony of Mrs. Medlin, the wife of the plaintiff, is practically to the same effect as that of her husband, except she states "I am the operating head or manager of the business (fireworks business). . . . Mr. Medlin is not physically able to do any work or assume any responsibilities. The only thing that he does with this fireworks business is he signs some checks, either Mr. Pierce or I will write those checks out and he signs them and he answers the telephone sometimes. Mr. Medlin's presence is not necessary at Zebulon for the operation of the Dixie Fireworks Company, because it has been run when he wasn't there for three months at a time. When he goes to Hot Springs the office is not closed up, it is open and the business goes on exactly like it does when he is there. . . . The fireworks season lasts two months out of each year, that includes the 4th of July and Christmas."

There being ample evidence of the plaintiff's permanent disability, the ultimate question confronting us is reduced to whether the testimony of the plaintiff himself negatives his allegation and contention that he is, and will be, wholly prevented from performing any work for compensation, gain or profit, and from following any gainful occupation.

This Court has frequently construed total and permanent disability clauses in life insurance policies to mean that the insured cannot recover disability benefits if he is able to engage with reasonable continuity in his usual occupation or in any occupation that he is physically and mentally qualified to perform substantially the reasonable and essential duties incident thereto. This rule of law has been given application to the extent of denying benefits to an insured who, though suffering from a severe disability, continues to work at a gainful occupation.

In *Thigpen v. Ins. Co.*, 204 N. C., 551, 168 S. E., 845, the widow of a farmer and the beneficiary under an insurance policy held by her husband, containing a waiver of premium and disability benefit clause to the effect that if the insured should furnish proof that "he has been wholly and continuously disabled by bodily injuries or disease other than mental, and will be permanently, continuously and wholly prevented thereby from pursuing any occupation whatsoever for remuneration or

profit," such waiver and benefits would accrue, instituted suit against the company issuing the policy, alleging that she had furnished proof that the insured prior to his death was so disabled and that the waiver of premiums and the payment of the disability benefits had been refused. The evidence as to whether the insured was wholly disabled was conflicting, except it was not controverted that he had received $40.00 per month as a court crier up to the time of his death. In upholding a judgment of nonsuit this Court said: "The ultimate question is whether the infirmities and disabilities of the insured wholly prevented him 'from pursuing any occupation whatsoever for remuneration or profit.' Must such a question be submitted to a jury, or, upon admitted facts, is it a question of law for the court? Ordinarily, such questions must be submitted to a jury; but in the case at bar it is admitted that from January till June, a few days prior to his death, the insured received $40.00 per month as compensation for his services as court crier for the county court of Pitt County. It is true that physicians and many other prominent citizens of the community testified that the insured was neither physically nor mentally capable of discharging such duties. Nevertheless it is beyond question that the services of the court crier were satisfactory to the public authorities, because they actually paid him his monthly stipend of $40.00."

In *Boozer v. Assurance Society,* 206 N. C., 848, 175 S. E., 175, we find the following: "Conceding that there was evidence at the trial tending to show that plaintiff suffered a permanent disability from disease, while he was insured by the defendant, and before he had attained the age of 60 years, we must hold that there was no evidence tending to show that the disability was total. All the evidence shows that plaintiff was able to perform and did perform the duties of his employment up to and including the day of his discharge, which terminated his insurance. For this reason there was error in the refusal of the court to allow defendant's motion, at the close of all the evidence, for judgment as of nonsuit. See *Thigpen v. Ins. Co.,* 204 N. C., 551, 168 S. E., 845."

The principle that an insurance company is liable to an insured under policies of insurance containing disability provisions similar to the policy in suit only if the insured becomes both permanently and totally disabled to pursue any occupation for compensation or profit has been enunciated in many cases in this jurisdiction. See *Hill v. Insurance Co.,* 207 N. C., 166, 176 S. E., 269; *Whiteside v. Assurance Society,* 209 N. C., 536, 183 S. E., 754; *Lee v. Assurance Society,* 211 N. C., 182, 189 S. E., 626.

The evidence of the plaintiff not only fails to show that the insured in the case at bar was wholly disabled to pursue any occupation for gain or profit but shows affirmatively that he, together with his wife, operated

and conducted a very successful business, a business that was his "idea" and which was well on the way of development when he was married, and which continued to grow by such leaps and bounds that the plaintiff was able after being forced by the failure of his eyesight in 1929 to give up his "regular line," the shoe sale business, to make a livelihood for his family and himself out of the former "side line," the fireworks business, and to increase his net worth thereby from 1935 to 1939 from $26,875.00 to $46,365.25, nearly $20,000.00.

We do not concur in the contention of the appellee's brief that such services as the evidence tends to show the plaintiff rendered to the fireworks business or such things as the plaintiff did therefor were mere "odd jobs of a comparatively trifling nature," which would not preclude recovery, as was the case in *Leonard v. Insurance Co.,* 212 N. C., 151, 193 S. E., 166; *Smith v. Assurance Society,* 205 N. C., 387, 171 S. E., 346.

The services the plaintiff rendered and the things he did were executive in their nature, but nonetheless material and essential for the very existence of the business. One cannot read the record without being impressed with the business acumen, even genius, the plaintiff displayed in his conception, organization and operation of the fireworks business. Handicapped, as he doubtless was by his faulty eyesight and physical infirmities, he nevertheless kept a constant and careful supervision of the business, being continuously on the lookout to extend and increase its volume, making trips and negotiating contracts and looking after the financing and successfully upbuilding of the business to a point where it furnished a livelihood for himself and wife and children, and provided employment for many others, and withal increasing his net worth nearly $20,000.00 in five years. Such services, attended with such results, cannot be properly designated as "odd jobs of a comparatively trifling nature."

The case at bar is distinguishable from *Guy v. Insurance Co.,* 206 N. C., 118, 172 S. E., 885, wherein an involuntary nonsuit was reversed, in that the plaintiff in the *Guy case, supra,* was a farmer, accustomed to doing farm labor, and the evidence tended to show that while he could no longer do farm labor, he could nevertheless "direct his business of farming for compensation and profit"—the holding being in effect that since the evidence tended to show that the plaintiff could no longer perform the farm labor, which he was accustomed to perform, although he could direct his business of farming for compensation and profit, that an involuntary nonsuit was erroneously entered. In the case at bar the plaintiff was not a laborer, but an executive, the originator, organizer and operator of the business, and his own testimony tends to show that he has continuously remained the executive head of the business and has

continuously performed the services that he rendered the business from its incipiency. The fact that the plaintiff was unable to perform physical labor for the business, which the evidence fails to reveal he ever performed, did not disable him from performing the work he had been accustomed to perform for the business, executive service, for compensation and gain.

We have omitted to comment upon the evidence relating to the hauling and trucking business of the plaintiff for the reason that the fireworks business is by all of the evidence the principal source of occupation and income of the plaintiff. However, it appears that the plaintiff's activities with relation to this business were proportionately as great and as essential as they were in behalf of the fireworks business—executive and supervisory in their nature.

We reach the conclusion that the testimony of the plaintiff himself and his other evidence, when construed in the light most favorable to him, giving him the benefit of every reasonable inference and intendment to be drawn therefrom, while it tends to establish the plaintiff's permanent disability, it negatives his allegation and contention that he has been, since 1 January, 1939, and will remain totally disabled, so that he will be wholly prevented thereby from performing any work for compensation, gain or profit, and from following any gainful occupation, and that, therefore, the motion of the defendant for a judgment as in case of nonsuit should have been allowed. The case is remanded that judgment may be entered accordant with this opinion.

Reversed.