MRS. ETHEL GREGORY v. TRAVELERS INSURANCE COMPANY.

(Filed 5 May, 1943.)

**1. Trial § 22b: Appeal and Error § 40c—**

In considering a motion for nonsuit after all the evidence of both sides has been heard, the defendant's evidence unless favorable to the plaintiff, is not to be taken into consideration, except when not in conflict with plaintiff's evidence, it may be used to explain or make clear that which has been offered by plaintiff.

**2. Insurance § 32c—**

Where, under the terms of the insurance contract sued on, insurance on life of insured ceased when his employment by the Johnston Manufacturing Company terminated, with proviso that if, at such termination, insured was wholly disabled and prevented by disease from engaging in employment for wage or profit, the insurance would remain in force, and the evidence of plaintiff, beneficiary in the policy, tended to show that insured was regularly engaged for wages in the same occupation, with reasonable continuity, for a considerable period of time, after the termination of the service in which he was insured and to within a few days of his death, defendant's motion for nonsuit at close of all the evidence was properly allowed.

SEAWELL, J., concurring in result.

APPEAL by plaintiff from *Warlick, J.,* at February Term, 1943, of MECKLENBURG. Affirmed.

This was an action by the beneficiary in a life insurance certificate issued by defendant 3 February, 1941, on the life of Thomas J. Gregory, now deceased. The certificate was issued under a group insurance policy covering the employees of Johnston Manufacturing Company. According to the terms of the certificate it was agreed that the insurance should terminate when the insured's employment with the employer should terminate. However, it was provided "that in a case, where at the time of the termination of employment the employee shall be insured and shall be wholly disabled and prevented by bodily injury or disease from engaging in any occupation or employment for wage or profit the insurance will remain in force as to such employee during the continuance of such disability."

Plaintiff's evidence tended to show that the insured became ill with ulcerated colitis in the spring of 1941; that 12 June, 1941, he left the employment of Johnston Manufacturing Company because of his inability to work, due to disease, and that he died 26 August, 1941; that prior to his leaving Johnston Manufacturing Company's employ he complained of pains in his stomach and had sick and fainting spells, and was unable to work regularly. It also appeared from plaintiff's evidence that "after he quit the Johnston Mills he worked for a short time at Hoskins Mill." "After he quit the Johnston Mills Company, he worked at Hoskins. He also worked at the Louise Mill for a few days." Another witness testified that up to the time he died he was employed at the Hoskins Cotton Mills, and worked there five or six weeks; that he was "pale, weakly-looking," and underweight. "I was doing the same kind of work in the same department or division that he was in. He ran his job very well I imagine, but I wasn't where he was; I was at the other end. I have helped him in his job."

The defendant offered evidence, supported by pay roll sheets, tending to show that the insured went to work in the Louise Mill 24 June, and worked regularly eight hours per day up to 15 July, and on 17 July began work at the Hoskins Mill and worked regularly there (forty hours per week) until 20 August, when he quit. All the places where insured was employed were textile mills, and his work was that of "doffer."

At the close of all the evidence defendant's motion for judgment of nonsuit was allowed, and from judgment dismissing the action plaintiff appealed.

*W. Vance Howard and Joe W. Ervin for plaintiff, appellant.*
*Tillett & Campbell for defendant, appellee.*

DEVIN, J. Under the terms of the insurance contract sued on the insurance on the life of Thomas J. Gregory ceased when his employment

by the Johnston Manufacturing Company, the employer named in the group policy, terminated. However, it was provided in the certificate of insurance that if at the time of the termination of his employment, while insured, he was "wholly disabled and prevented by bodily injury or disease from engaging in any occupation or employment for wage or profit," the insurance would remain in force.

The question presented by the appeal is whether the evidence offered by the plaintiff is sufficient to bring her case within the proviso contained in the certificate of insurance. It is admitted that the insured left the employment of the Johnston Company while the insurance was still in force, 12 June, 1941. Was he at that time "wholly disabled" and prevented by disease "from engaging in any occupation or employment for wage or profit?" From an examination of the testimony appearing in the record we are constrained to concur in the ruling below that the evidence was insufficient to support the plaintiff's case as to this essential element. While there is evidence tending to show that the insured was afflicted with a disease which finally proved fatal, and that at the time he left the employment of the Johnston Company he was unable to work by reason of disease, it does appear affirmatively from the plaintiff's evidence that as a matter of fact he did work five or six weeks with reasonable continuity at two other mills, after he left the employment of Johnston Manufacturing Company, performing the substantial duties of the same occupation. *Thigpen v. Ins. Co.,* 204 N. C., 551, 168 S. E., 845. Thus, the plaintiff has failed to show that he was prevented by disease from engaging in employment for wage or profit. His regular employment in two other cotton mills as a doffer for five or six weeks may not be regarded merely as an occasional or casual employment. It indicated something more than the intermittent and futile attempts to work on the part of a sick man who is "wholly disabled." *Medlin v. Ins. Co.,* 220 N. C., 334, 17 S. E. (2d), 463; *Jenkins v. Ins. Co.,* 222 N. C., 83; *Ford v. Ins. Co.,* 222 N. C., 154. There was no evidence that he had to work at a reduced wage, or at a different occupation, or for shorter hours, or was ever discharged for inability to perform the duties of his job. *Bulluck v. Ins. Co.,* 200 N. C., 642, 158 S. E., 185; *Edwards v. Junior Order,* 220 N. C., 41, 16 S. E. (2d), 466; *Blankenship v. Assurance Society,* 210 N. C., 471, 187 S. E., 590; 98 A. L. R., 478.

While the defendant offered evidence supported by pay roll records tending to show that after his employment by the Johnston Company terminated the insured worked approximately forty hours per week for eight weeks, defendant's evidence could not be considered on the motion for nonsuit, except in so far as it tended to clarify or explain the evidence of the plaintiff. *S. v. Fulcher,* 184 N. C., 663, 113 S. E., 769. The

rule for the consideration of defendant's evidence on a motion for nonsuit was stated by *Stacy, C. J.,* in *Harrison v. R. R.,* 194 N. C., 656, 140 S. E., 598, as follows: "In considering the last motion (for nonsuit), the defendant's evidence, unless favorable to the plaintiff, is not to be taken into consideration, except when not in conflict with plaintiff's evidence, it may be used to explain or make clear that which has been offered by the plaintiff." This statement of the rule was quoted with approval in *Crawford v. Crawford,* 214 N. C., 614, 200 S. E., 421; *Funeral Home v. Ins. Co.,* 216 N. C., 562, 5 S. E. (2d), 820; *Jeffries v. Powell,* 221 N. C., 415, 20 S. E. (2d), 561; *Tarrant v. Bottling Co.,* 221 N. C., 390, 20 S. E. (2d), 565. See also *Godwin v. R. R.,* 220 N. C., 281, 17 S. E. (2d), 137. In *Sellars v. Bank,* 214 N. C., 300, 199 S. E., 266, it was said that the defendant's evidence which did not tend to contradict or impeach the evidence of the plaintiff, but "only served to amplify and explain the same," could be considered on the motion to nonsuit. The use of the word amplify in this case may not be understood as indicating a tendency to expand the rule laid down in the *Harrison case, supra,* or to open the door to the consideration, on this motion, of defendant's evidence except only such as serves to explain or make clear that offered by the plaintiff.

However, without considering the defendant's evidence, we think plaintiff's evidence sufficiently tends to show that the deceased was regularly engaged in the same occupation, with reasonable continuity, for a considerable period of time, after he left the service in which he was insured. Thus, after the termination of his employment by the Johnston Company he was unprotected by the saving clause in the certificate of insurance, and the casualty of his death under these circumstances was not within the coverage of the insurance. Unfortunately for the beneficiary, this prevented recovery on the insurance certificate, but we must hold the parties bound by the express terms of the contract into which they have entered.

The judgment of the Superior Court is

Affirmed.

SEAWELL, J., concurring in result: I concur in the result reached in this case, because I think it is unavoidable on consideration of plaintiff's evidence. But I do not agree with the view expressed in the main opinion that the court may draw inferences from the defendant's evidence unfavorable to the plaintiff upon a demurrer to the evidence and motion to nonsuit, and thereby deny the plaintiff his right of trial by jury. I do not believe it is consistent with our institutions relating to trial that the defendant may be permitted to swear himself out of court without the intervention of a jury, while the plaintiff to obtain relief must necessarily submit his evidence to that tribunal.

In so far as I am able to discover, the group of cases cited in the main opinion in support of that doctrine comprises the whole list of decisions favorable to that view, and ignores scores of cases to the contrary.

In my judgment, the dissident view is based on a misconception of the office of a demurrer to the evidence and the purpose and effect of C. S., 567, permitting defendant as a matter of right to introduce his evidence after demurring to that of plaintiff. The statute is procedural and does not affect the principles of demurrer to the evidence as it existed at common law. The office of demurrer to the evidence is to present to the court the evidence in its legal aspects only to ascertain whether it has, according to legal standards, any probative value in establishing the plaintiff's claim. The ultimate purpose of such an examination is simple. The office of the court ends when the legal character of the offered proof is ascertained—whether it is evidence or no evidence to support the case—and from then on it is a matter for the jury. The ultimate reception of such evidence by the jury, which alone can pass upon its weight, credibility and significance, is a part of the process. At no point in it have we any power—except that which results from the unreviewability of our decisions—to pass upon the weight or credibility of the evidence or to accept it as true, or to balance it against the evidence of the plaintiff in aid of the motion to nonsuit. Compare *S. v. Fulcher,* 184 N. C., 663, with *Means v. R. R.,* 126 N. C., 424, 429, construing the statute.

That the weight of authority is against such a proceeding cannot be doubted upon a careful study of the decisions of this Court. *Springs v. Schenck,* 99 N. C., 551, 555; *Newby v. Realty Co.,* 182 N. C., 34, 41; *S. v. Ammons,* 204 N. C., 753, 757; *Tuttle v. Bell,* 203 N. C., 154, 156. The list of decisions so holding might be almost indefinitely lengthened. While these cases are expressly to the point, it is equally true that all those cases using the familiar formula that upon a demurrer to the evidence and motion to nonsuit, the evidence must be taken in the most favorable light to the plaintiff, and plaintiff is entitled to every reasonable inference therefrom, have back of them a recognition of the true function of the demurrer, as well as an appreciation of our constitutional inhibition against passing upon the weight and credibility of the evidence and thereby depriving the plaintiff of his right to trial by jury. See collection of cases in annotation under C. S., 567, Michie's Code of 1939.

As I have said, outside of the group of cases cited in the main opinion, it is universally held that the statute did not change any of the principles of demurrer to the evidence as they existed at common law. The effect of such a demurrer in jurisdictions like ours, where courts are not permitted to pass upon the weight of evidence, is thus stated in 64 C. J.,

p. 384: "Only that portion of the evidence which tends to prove the case of the demurree can be considered, and evidence which tends to break down the case of demurree cannot be considered." Otherwise, it would be a speaking demurrer.

I assume that no one would suggest that any member of this Court is concerned whether the plaintiff or the defendant wins in any particular case, or class of cases. We are all concerned with the integrity of the processes which have been established to reach justice in all cases. While abstract views upon the merits of the jury system have been entertained by groups of people at all times, few would be bold enough to dispute that institutionally, at least, and for purpose of practical observance, the debate was closed with the adoption of Article I, section 19, of the Constitution, which requires that it be kept inviolate. Whether the line has been overstepped in the case at bar is a matter of individual opinion, and I accord to my colleagues as much sincerity in their position as I expect for my own.

For several hundred years English speaking peoples have been unwilling to trust judges as triers of the facts, and have emphasized that feeling in the only way they could—by writing it in the fundamental law. They still try to maintain that principle. It is not that our courts are not now filled with men of integrity and ability—perhaps it is because they are not yet convinced that society has not received as much damage from the mistakes of judges as it has from the ignorance of juries. Whether I personally share that feeling or not, I prefer that when these barriers are broken down, it should be by an orderly amendment to the Constitution and not through erosion by the Court.

The statute, C. S., 591, empowers the trial judge, in his discretion, to set aside the verdict for insufficiency of evidence. This is the only relief consonant with the constitutional limitations on judicial power.