RALPH P. BRADLEY v. T. W. PRITCHARD, BRUCE A. BLEVINS, W. P.
THOMPSON, ADON N. SMITH, II, AND T. W. PRITCHARD, JR.,
TRUSTEES OF "PRITCHARD PAINT AND GLASS COMPANY EMPLOYEES' PEN-
SION TRUST."

(Filed 1 March, 1961.)

Insurance § 33— Disability preventing performance of work for which
employed or similar work does not preclude ability to work inter-
mittently at odd jobs.

　　Evidence tending to show that plaintiff was discharged because of his
failure to turn out work with sufficient speed to make him a profitable
employee, that after his discharge he attempted other employment but
was discharged therefrom after a very short time because he was not
able to do the simple duties of the employment, together with expert
testimony that at the time of his original discharge plaintiff was totally
and permanently disabled by reason of anemia, low blood pressure, and
neurasthenia, *is held* sufficient to be submitted to the jury in plaintiff's
action to recover benefits provided in the employer's pension plan for
employees whose termination of employment is due to total and perma-
nent disability to perform the "job for which he is employed or similar
work."

APPEAL by defendants from *Clarkson, J.,* October Term, 1960, of
BUNCOMBE.

This is an action brought by the plaintiff to recover from the de-
fendants certain funds which he claims belong to him as a participant
under an employees' pension trust, on the ground that at the time
of his discharge from employment he was then totally and permanent-
ly disabled to perform the duties of the job for which he was employed
or for similar work.

The plaintiff was employed by the Pritchard Paint and Glass Com-
pany of Asheville, beginning in 1943, where he worked continuously
until on or about 16 July 1956. The defendants are trustees of a trust
known as "Pritchard Paint and Glass Company Employees' Pension
Trust." On 17 December 1948 the plaintiff became a participant under
the trust and on that date a policy of life insurance was issued to the
plaintiff upon his life by the Northwestern Mutual Life Insurance
Company. The cash surrender value of this policy on 14 January 1957
was $3,924.23, which sum was received on the above date by the de-
fendants as trustees.

The pension trust agreement covered employees of the Pritchard
Paint and Glass Company (Charlotte) and Pritchard Paint and Glass
Company of Asheville (Asheville), and in pertinent part reads as
follows: "ARTICLE VIII. * * * 1. In the event that the employment
of any Participant shall terminate before his normal retirement date
by reason of his becoming totally and permanently disabled, the

COMPANIES shall immediately give written notice to the TRUS-TEES of the fact that the employment of such Participant has been terminated and the date of such termination. In order to establish such disability, a Doctor of Medicine, approved by the COMPANIES, must certify to the COMPANIES in writing that the Participant is disabled to perform the job for which he was employed, or similar work. In the event that the COMPANIES determine that the Participant's employment was terminated by reason of his becoming totally and permanently disabled, as aforesaid, such Participant shall be entitled to the full equity in the contracts then held for his benefit hereunder and such equity or benefits shall be paid to said Participant in the manner directed by the Participant, with the approval of the TRUSTEES.

"2. * * * (e) (I)f such employee has been a Participant hereunder for more than five (5) years but less than ten (10) years and the termination of his employment is occasioned by discharge on the part of the COMPANIES without cause, he shall have a vested interest in 25% of the cash value of all contracts held for his benefit up to the date of such termination of services. * * *"

When the Certificate of Participation in the pension plan was issued on 17 December 1948 and forwarded to the plaintiff herein, it was accompanied by a letter signed by T. W. Pritchard, which read in part as follows: "Your Company is anxious to promote the welfare of its employees. Realizing that you can only prosper as your Company prospers, and realizing that the time will come when you can not serve your Company as you are doing now, this Pension Plan has been established to help you to prepare for that time. This plan will provide an income for you at the time in your life when you may most need it, or it will provide something for your family in event of your death prior to that time. In ANY EVENT it should prove to be a blessing to you."

The plaintiff was discharged by the Pritchard Paint and Glass Company of Asheville on 16 July 1956. The normal retirement age of plaintiff under the pension plan was 65 years. Plaintiff was 57 years of age in 1956. Employees were not required to contribute to the pension fund.

The evidence tends to show that on 17 July 1956 the plaintiff went to see Dr. Lawrence Sprinkle, by whom he was examined; that Dr. Sprinkle filled out a report of his examination of the plaintiff on a form furnished by the Pritchard Paint and Glass Company. This report was dated 18 July 1956 and forwarded to the Pritchard Paint and Glass Company of Asheville by Dr. Sprinkle. The report states that plaintiff's illness was due to "anemia, low blood pressure, neuras-

thenia." Dr. Sprinkle certified in this report that the plaintiff was totally disabled and prevented from performing all the duties of his occupation from that date.

Thereafter, on 21 August 1959 and on 19 November 1959, Dr. Sprinkle made affidavits with respect to the mental and physical condition of the plaintiff. These affidavits were furnished the plaintiff's employer. They were to the effect that the plaintiff was totally and permanently disabled from and after the date of his first examination on 17 July 1956.

Dr. Sprinkle was a witness for the plaintiff in the trial below, and the defendants admitted and the court found that he is a duly licensed and practicing physician engaged in the general practice of medicine and surgery and is a medical expert. Dr. Sprinkle testified, among other things, "I saw Mr. Bradley professionally on or about the 17th day of July, 1956, in my office, where he was examined by me, and I diagnosed his ailments. Mr. Bradley had a mild anemia, low blood pressure, benign prostatic hypertrophy, and arteriosclerosis and neurasthenia. The arteriosclerosis was moderately severe and he had moderate arthritis involving the joints of the fingers, toes and vertebrae. On that day, I filled out a form which I signed on July 18. The report is in my handwriting. This is a group insurance blank and the diagnosis that I put down on that date was anemia, low blood pressure and neurasthenia. Neurasthenia might be called in lay terms nervous prostration. It is a psychoneurosis or nervous disorder, characterized by exhaustion and abnormal fatigability. It is the name for a group of symptoms, some functional disorder of the nervous system, with severe depression of the vital forces. It is usually due to prolonged, excessive expenditure of energy and is marked by a tendency to fatigue, lack of energy, pain in the back, loss of memory, insomnia, constipation, loss of appetite, mental and visual disturbances, and the constant sense of the pulse beat, and irregularity of the pulse beat, heart action and blood pressure.

"I reported on that day in July, when I examined him, that he was suffering from neurasthenia. Benign prostatic infection is an enlargement of the prostate gland without cancer. Arteriosclerosis in lay terms is hardening of the arteries, and on that day I found he was suffering from it. He has some arthritis, which is a disease of old age, and is usually marked by enlargement of various joints of the skeletal system, and often by calcification of the joints. It is my opinion that the ailments which I found will be permanent and continuing."

Between 17 July 1956 and the time the case was tried, this physician re-examined the plaintiff eleven times. He further testified, "In my opinion there have been no times from July 1956 until this date

that he was not totally and permanently disabled." This testimony was in conflict with one of the affidavits made by Dr. Sprinkle to this extent: There appears in the first affidavit referred to above, the statement, "affiant is of the opinion that the patient (plaintiff) might have for a few days, been able to do light work during the period of time July 18, 1956 to this date (August 21, 1959)." Even so, the affidavits and oral testimony of Dr. Sprinkle were to the effect that the plaintiff since his first examination on 17 July 1956 has been totally and permanently disabled to perform the work for which he was employed as a glazier, or similar work.

Fred Rice testified that he was a construction foreman for the Merchant Construction Company, that for a short time in 1958 the plaintiff attempted to work for the Merchant Construction Company; that plaintiff was employed to do light work, cleaning up, carrying boards, and as a handy man around general construction. This witness further testified: "He tried to do the work. * * * I discharged him because he was not able to do the work. He was off one week and come back and said he felt a little better and he would like to try again. I said, 'O.K., if you can make it, you can try.' He worked one day. * * * I discharged him after that day. I said, 'Plumer, you can't do the work, I am going to have to let you go.' "

Defendants rely on the fact that the plaintiff, prior to his discharge, worked about as regularly as the average employee; there were complaints about the time consumed by the plaintiff in doing his work. Mr. T. W. Pritchard, Jr., manager of the Asheville corporation, testified: "I fired him because of his general over-all attitude, for his lack of interest, and his lack of cooperation and the lack of doing the job as prescribed by management."

, Evidence by a number of other witnesses who testified for the defendant tends to show that the plaintiff complained often about not feeling well; that while he had slowed up in his work, there is no evidence the plaintiff ever did any unsatisfactory work or that he was uncooperative. In fact, the defendants' witnesses who had worked with the plaintiff testified that he never violated a rule of the company or failed to carry out an order of his superiors. The evidence of the manager of the employer tends to show that this employee for sometime had not been turning out work as a glazier with sufficient speed to make him a profitable employee for the corporation.

At the close of the evidence defendants moved for judgment as of nonsuit. The motion was overruled.

It was stipulated that the following issues should be submitted to the jury:

"1. Was the plaintiff's employment with Pritchard Paint & Glass

Company terminated by reason of his becoming totally and permanently disabled to perform the job for which he was employed, or similar work, as alleged in the complaint?

"2. If not, was the termination of plaintiff's employment occasioned by his discharge from the company with cause, as alleged in the answer?"

It was further stipulated, "That if the jury should answer the first issue in favor of plaintiff, the court by consent may render judgment in the amount prayed for, plus interest; and if the first issue is answered in favor of defendant and the second issue in favor of plaintiff the court may by consent render judgment in favor of plaintiff in the amount of one-fourth of the amount prayed for, plus interest."

The jury answered the first issue in the affirmative and the court entered judgment on the verdict in favor of the plaintiff in accordance with the stipulation. The defendants appeal, assigning error.

*E. L. Loftin, Ward & Bennett for plaintiff.*
*Lee & Lee; Cochran, McCleneghan & Miller for defendants.*

DENNY, J. The defendants have abandoned all their exceptions and assignments of error except to the refusal of the court below to sustain their motion for judgment as of nonsuit. Therefore, the sole question for consideration and determination is whether or not the plaintiff's evidence, when considered in the light most favorable to him, was sufficient to carry the case to the jury.

The pension agreement, pursuant to which the plaintiff claims the surrender value of the insurance policy issued on his life when he qualified for the benefits under the pension plan on 17 December 1948, sets out what is required to establish total disability under the agreement. It provides: "In order to establish such disability, a Doctor of Medicine, approved by the COMPANIES, must certify to the COMPANIES in writing that the Participant is disabled to perform the job for which he was employed, or similar work."

The appellants cite and rely upon *Thigpen v. Insurance Co.,* 204 N.C. 551, 168 S.E. 845; *Boozer v. Assurance Society,* 206 N.C. 848, 175 S.E. 175; *Hill v. Insurance Co.,* 207 N.C. 166, 176 S.E. 269; *Lee v. Assurance Society,* 211 N.C. 182, 189 S.E. 626; *Medlin v. Insurance Co.,* 220 N.C. 334, 17 S.E. 2d 463; *Jenkins v. Insurance Co.,* 222 N.C. 83, 21 S.E. 2d 832; *Ford v. Insurance Co.,* 222 N.C. 154, 22 S.E. 2d 235; *Johnson v. Assurance Society,* 239 N.C. 296, 79 S.E. 2d 776; and *Andrews v. Assurance Society,* 250 N.C. 476, 108 S.E. 2d 921.

In each of the above cases the plaintiff or beneficiary, before he or

she was entitled to recover under the provisions of the contract or policy of insurance involved, had to be both totally and permanently disabled to such an extent as to be unable to pursue any occupation whatsoever for remuneration or profit. Recovery was denied in each of the above cases because the evidence was insufficient to establish such disability.

In *Medlin v. Insurance Co., supra,* it is said: "This Court has frequently construed total and permanent disability clauses in life insurance policies to mean that the insured cannot recover disability benefits if he is able to engage with reasonable continuity in his usual occupation or in any occupation that he is physically and mentally qualified to perform substantially the reasonable and essential duties incident thereto. This rule of law has been given application to the extent of denying benefits to an insured who, though suffering from a severe disability, continues to work at a gainful occupation."

In the case of *Bulluck v. Insurance Co.,* 200 N.C. 642, 158 S.E. 185, this Court, speaking through *Brogden, J.* said: "The reasoning of the opinions seems to indicate that engaging in a gainful occupation is the ability of the insured to work with reasonable continuity in his usual occupation or in such an occupation as he is qualified physically and mentally, under all the circumstances, to perform substantially the reasonable and essential duties incident thereto. Hence, the ability to do odd jobs of comparatively trifling nature does not preclude recovery. Furthermore, our decisions and the decisions of courts generally, have established the principle that the jury, under proper instructions from the trial judge, must determine whether the insured has suffered such total disability as to render it 'impossible to follow a gainful occupation.' "

The plaintiff, under the terms of the agreement involved herein, is not required to show total and permanent disability that would prevent him from performing the duties of any other occupation, but only that there was total and permanent disability to the extent that he could not perform with reasonable continuity the "job for which he was employed (as a glazier), or similar work."

In light of the provisions of the pension agreement and the testimony adduced in the trial below, in our opinion, the plaintiff made out a case for the jury. *Bulluck v. Insurance Co., supra; Guy v. Insurance Co.,* 206 N.C. 118, 172 S.E. 885; *Gennett v. Insurance Co.,* 207 N.C. 640, 178 S.E. 87; *Leonard v. Insurance Co.,* 212 N.C. 151, 193 S.E. 166.

The ruling of the court below is

Affirmed.