Russell B. SMITH
v.
UNION CARBIDE CORPORATION.
Civ. A. No. 4810.

United States District Court
E. D. Tennessee, N. D.
April 7, 1964.

H. Calvin Walter, Knoxville, Tenn., for plaintiff.

E. H. Rayson, Kramer, Dye, Greenwood, Johnson & Rayson, Knoxville, Tenn., for defendant.

982

ROBERT L. TAYLOR, Chief Judge.

This action was commenced by Russell B. Smith on September 13, 1963 against the Union Carbide Corporation, a non-resident corporation, to recover damages in the amount of $50,000.00.

Plaintiff claimed in his complaint that he had been employed by the defendant for a number of years but had been terminated for medical reasons under circumstances entitling him to a pension under defendant's established pension plan. He further claimed that he had exhausted applicable arbitration remedies.

In the alternative, plaintiff claims that if he is not entitled to a pension, his termination was improper and that he is entitled to his job by reason of his contract of employment.

Subsequently plaintiff was permitted to amend his complaint to allege that he had been improperly advised of his rights by the defendant at the time of his termination.

Defendant moved to dismiss. The motion to dismiss was overruled with the right of the defendant to rely, on the trial on the merits, on the grounds urged in its support.

By answer defendant asserted a number of defenses, including, (1) that the Court is without jurisdiction because a jurisdictional amount is not in controversy. The Court is of the opinion that that ground is not well taken for at least three reasons. (a) The amount alleged in the complaint is $50,000.00; (b) The pension involved, if plaintiff lives to be 65 years of age, will amount to more than $10,000.00; (c) Under Section 301 of the National Labor Relations Act, as amended, the Court in all probability would have jurisdiction.

But aside from the (b) and (c) reasons, the Court has jurisdiction under the Hurn v. Oursler case, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 because plaintiff claims damages in the amount of $50,000.00 and even though plaintiff is not entitled to recover anything on this allegation it was made in good faith and if the Court has the right to take jurisdiction for one purpose (and it does have the right in this case), it has the right to take jurisdiction for all purposes.

(2) that the Court is without jurisdiction in that the administrative determination of plaintiff's claim through an impartial board of doctors selected pursuant to the collective bargaining agreement controlled plaintiff's right to employment and pension and that the decision of such board was adverse to and conclusive upon plaintiff. This claim is without merit and will be discussed in more detail hereafter.

(3) that the Court is without jurisdiction of plaintiff's alternative claim based upon his alleged wrongful termination in that plaintiff failed to invoke administrative remedies applicable thereto under the collective bargaining agreement. The Court is of the opinion that this claim is lacking in merit and is, therefore, overruled.

(4) that plaintiff was not permanently and totally disabled at the time of his termination. This ground addresses itself to the merits of the case and the Court will have more to say about it hereafter.

(5) that plaintiff's termination was not violative of the agreement and defendant denies that it breached any obligation it had with respect to the plaintiff. This ground goes to the merits of the lawsuit and will be discussed also hereafter.

From the record the Court finds that plaintiff was employed as a painter by defendant at Oak Ridge at the gaseous diffusion plant operated by defendant. Plaintiff's employment commenced October 10, 1945 and continued until his termination on January 12, 1961. His termination was described as a "medical termination" and this description is contained in Exhibit 4, Separation Notice.

Prior to his termination many doctors recommended medical treatment for him and the company informed him that he

would have to follow such medical recommendations or be terminated for medical reasons. Plaintiff refused to follow such recommendations.

At the time of his termination, the company did not advise him; and claims that it did not consider him totally and permanently disabled. At the time of his termination he was employed in a job classification subject to an agreement between the defendant, the Union Carbide Nuclear Company, a division of Union Carbide Corporation, and Oil, Chemical and Atomic Workers, International Union, AFL-CIO, and its Local 3–288, effective October 15, 1958, which agreement is filed as Exhibit No. 1.

The pension plan referred to at page 63 of Exhibit 1 is set forth in a booklet entitled "The Pension Plan" and is filed as Exhibit No. 3.

The pension plan sets forth a number of requirements for eligibility for pension, "Part B, Disability Benefits, Prior to Age 65," two of which are as follows:

"a. the employee becomes totally and permanently disabled as the result of bodily injury or disease so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profits, and

"b. such disability as deemed by the Company to be permanent and continuous during the remainder of the employee's life, * * *"

Smith was not 65 at anytime material to this case.

Paragraph 4 of that part of the agreement entitled "Agreement on Pension Plan," page 64, sets forth the manner in which a dispute with respect to whether an employee is totally and permanently disabled within the meaning of the pension plan shall be resolved, and it provides in pertinent part:

"4. If any dispute shall arise between the Company and any bargaining-unit employee as to whether such employee is, or continues to be, totally and permanently disabled within the meaning of the Pension Plan, such dispute shall be resolved as follows:

"The employee shall be examined by a physician appointed for the purpose by the Company and by a physician appointed for the purpose by the Union. If they disagree concerning whether the employee is totally and permanently disabled, the question shall be submitted to a third physician selected by such two physicians. The medical opinion of the third physician, after examination of the employee and consultation with the other two physicians, shall decide the question. The fees and expenses of the third physician shall be shared equally by the Company and the Union."

Plaintiff instituted his claim for a pension on January 12, 1963, more than two years after his termination, by means of a letter written on his behalf by his attorney with a statement of claim and physician's statement attached and filed as Exhibit No. 5. Upon receipt of this letter, Mr. J. A. George, Employee Relations Department, Oak Ridge Gaseous Diffusion Plant, wrote the Union on February 20, 1963 and advised it that a dispute had arisen between the Company and plaintiff as to whether plaintiff was totally and permanently disabled within the meaning of the pension plan. (Defendant's Exhibit No. 6.)

In accordance with the agreement, defendant advised the Union that it was designating Dr. Henry B. Ruley to examine plaintiff to determine whether he was totally and permanently disabled. By letter of the same date, defendant advised plaintiff's attorney that plaintiff's claim was being handled in accordance with the agreement.

By letter dated February 20, 1963, the Union advised the defendant that in accordance with the contract it had designated Dr. Sheldon E. Domm to examine plaintiff. Doctor Domm reported his

findings to the Union in a letter dated March 1, 1963.

Under the procedure set forth in the agreement, Dr. Domm and Dr. Ruley agreed to appoint Dr. Andrew S. Wachtel as the third physician to determine whether plaintiff was permanently and totally disabled as contemplated by the agreement.

On May 6, Dr. K. S. Lane, defendant's medical director, advised the Union of this appointment and also advised plaintiff thereof. On the same day, the defendant advised Dr. Wachtel of this appointment.

In that connection, the appointment of Dr. Wachtel was brought about at the instance of Dr. Lane although Dr. Ruley and Dr. Domm had agreed that the third physician would be one from St. Albans Hospital at Radford, Virginia. This was natural since plaintiff had been in that hospital for some seven or eight days and that hospital had made an evaluation of his condition as the result of examination of him by its doctors during that period of time. The report of the St. Albans Hospital is filed as Exhibit No. 5.

The final diagnosis contained in this report dated September 8, 1960 reads:

"FINAL DIAGNOSIS: Medical—None
    Psychiatric—Anxiety reaction, Chronic 000–x01 in a passive-dependent personality.
CONDITION ON DISCHARGE: No Improvement. Patient was not treated.
DISPOSITION: The patient was returned to the local physician.
PROGNOSIS: Prognosis remains poor.
RECOMMENDATIONS: If he ever could agree to any treatment, perhaps he could get some response."

---

Doctor Lane explained that he considered that the St. Albans report did not report upon claimant's condition as of the date of his termination. The designation of Dr. Wachtel eventuated under the circumstances recounted above.

■ The Court is of the opinion, and finds, that the arbitrators, namely Drs. Domm, Ruley and Wachtel, did not comply with the provisions of the contract between the Union and the Company under which they were to act in that they did not consult with each other about plaintiff's condition after examination as provided for in the contract, particularly Section 4, page 64, of Exhibit 1. Since they did not comply with this contract in reaching a decision, such a decision is arbitrary and not binding on either of the parties.

Doctor Wachtel was of the opinion that plaintiff was not in such a mental condition as to make him permanently disabled although he recognized the fact, as did all

other physicians who examined or treated plaintiff, that he possessed an anxiety reaction and needed psychiatric treatment and hospitalization. When plaintiff entered St. Albans about a month before his work was terminated, the doctors at St. Albans tried to persuade him to take shock treatments but he refused because of fear.

This brings us to a consideration of the plaintiff's mental and physical condition as of January 12, 1961, the date of his termination. This is the crucial date.

At that time, plaintiff had a history of an ulcerated condition of his stomach, dislocated diaphragm, meaning that a part of his diaphragm was pushed upward and in an unnatural position, a chest condition, heart condition, defective hearing, and finally a serious mental condition.

■ The Court has listened carefully to the testimony in this case, particularly that of the doctors, and the Court is defi-

nitely of the opinion and finds that plaintiff met with an accident in 1957 in the performance of his duties for the defendant and that at or prior to that time he had not suffered with what has been described in this record as fixation neurosis. Soon after that accident the record shows that plaintiff developed traumatic neurosis which has grown progressively worse. This is a condition of the mind. Since it is a condition of the mind and since he feels that he cannot work, it affects the body and so it is, plaintiff is and has been since 1957 sick in the mind and sick in the body which has disabled him from the performance of his duties as a painter which is the only trade which he knows how to follow.

At the time he was terminated he was about 53 years of age, without education, could not read or write, and at the time he was terminated from his work the Court is of the opinion, and finds, that he was permanently and totally disabled within the meaning of the contract between the Union and the defendant.

The defendant recognized that he was not able to work without medical treatment and for that reason the defendant terminated his services. Plaintiff's long absentee record confronted the defendant with a serious problem, namely, how to best deal with it. The defendant did all it could to try to get him to take psychiatric treatment but he refused and, in the opinion of the Court, did so in good faith because of his fear that his mental condition would be worsened by such treatment.

As evidence of the fact that the defendant was acting in good faith, it brought in the Union and the Union was successful in persuading him to go to St. Albans at Radford, but even the Union, and it would be natural to believe that the Union would have more influence with him than any source other than his family, could not persuade him to take shock treatments.

The Court is of the opinion that it was recognized by all, including the defendant, at the time plaintiff was terminated, that he was totally disabled from carrying on his work without psychiatric treatment. But even with psychiatric treatment, this record indicates that the prognosis was unfavorable.

■ This man worked for this company more than 15 years and thus complied with the work requirements of the pension plan. Now at this late date, in his physical and mental condition, to turn him out, and away from work that he cannot do, and without a pension, is inequitable.

■ These pension plans have been construed by the courts liberally in favor of the employee. Pless v. Franks, 202 Tenn. 630, 308 S.W.2d 402; Wyckoff v. Board of Administration of the Retirement System of the City of Memphis, 208 Tenn. 604, 348 S.W.2d 289.

■ The Court is of the opinion that under the circumstances shown in this record, including the termination of plaintiff from his work for medical reasons, the defendant is estopped from now asserting that he was not and is not now permanently and totally disabled within the meaning of the pension plan. The pension agreement recognizes that employees may be declared totally and permanently disabled and thereafter get well, in which event the pension is discontinued. See Section 3, page 21, The Pension Plan, Exhibit 3.

The North Carolina Supreme Court appears to have had a case before it involving an employee whose symptoms, in many respects, were similar to the plaintiff in this case. That Supreme Court held that he was permanently and totally disabled within the meaning of the pension plan. See Bradley v. Pritchard, 254 N.C. 175, 118 S.E.2d 422.

In the opinion of the Court and the Court finds and concludes, that plaintiff is entitled to his pension benefits at the rate of and according to the terms provided for in the pension contract. The attorneys will work out the mathematics of this problem.

In view of this conclusion, it is not necessary for the Court to pass on plain-

tiff's contention that he is entitled to damages for his wrongful discharge.

 The Court feels since the plaintiff has waited so long and has had so much difficulty and is under such mental stress, that it would not be equitable to re-refer this case to the arbitrators for a decision as to plaintiff's condition as of January 12, 1961, and therefore, with deference to counsel for defendant, denies his motion to refer.

Let an order be presented in conformity with the views expressed herein.