LULI ET AL., APPELLEES; BELL ET AL., CROSS-APPELLANTS, *v.* SUN PRODUCTS CORPORATION, APPELLANT AND CROSS-APPELLEE, ET AL.

(No. 79-83—Decided December 19, 1979.)

*Messrs. Gabalac & Houk, Mr. Stephan Gabalac* and *Ms. Frances W. Houk,* for appellees and cross-appellants.

*Buckingham, Doolittle & Burroughs Co., L.P.A., Mr. Edward C. Kaminski, Mr. John N. Childs* and *Mr. Richard P. Rohrich,* for appellant and cross-appellee.

LOCHER, J.

*I.*

Appellant Sun, in its third proposition of law, contends that federal substantive law instead of Ohio law should be applied to the facts in the instant cause. Appellant asserts that the evolution of the Employee Retirement Income Security Act (ERISA) and its jurisdiction over pension funding matters, pursuant to Section 185, Title 29, U.S. Code, is controlling.

It is important to note that the termination of the pension agreement in the cause *sub judice,* on December 5, 1973, was prior to the enactment of ERISA. Section 1144 (b) (1), Title 29, U.S. Code, succinctly states:

"This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975."

From the unambiguous limitation of the scope of ERISA, it is evident that state law which was the controlling law prior to ERISA should be applied rather than federal law. Accordingly, appellant's third proposition of law is overruled.

*II.*

Appellant Sun's first two propositions of law, taken

together, constitute the critical issue to be decided herein. Appellant asserts that the trial court went beyond its authority in determining the contractual obligations of the parties in respect to pension rights established through collective bargaining. In essence, appellant contends that the court altered the terms of the contract for the parties. These propositions are misleading since the lower court did not improperly alter the contractual obligations of the parties, but rather enforced the contract.

It is well established in Ohio and other jurisdictions that employees have vested rights under private pension or retirement plans.[1] It is initially noted that the general rule is that pension or retirement plans are to be construed strictly against the employer.[2]

Noting the above, we affirm the ruling in *Cantor* v. *Berkshire Life Ins. Co.* (1960), 171 Ohio St. 405, in which the court, in the syllabus, held:

"Where an employee has complied with all the conditions of his employment contract relating to retirement benefits and has reached the retirement age specified in the contract, his retirement rights become vested, and an employer cannot, in the absence of one of the specified causes set forth in the contract for the divestiture of retirement benefits, divest him of such rights by the exercise of a provision in the contract allowing termination thereof without cause."

The impetus for pension plans is fostered by the sociological facts which have become increasingly predominant in present-day America. The notion of private pension plans as gratuities is archaic in today's advancing industrial economy.

The derived benefit to the employer can be summarized as allowing management flexibility by assuring an efficient

---

[1] See *Sheehy* v. *Seilon, Inc.* (1967), 10 Ohio St. 2d 242; *Conner* v. *Phoenix Steel Corp.* (Del. 1969), 249 A. 2d 866; *Schofield* v. *Zion's Co-op. Mercantile Institution* (1934), 85 Utah 281, 39 P. 2d 342; *Voigt* v. *South Side Laundry & Dry Cleaners, Inc.* (1964), 24 Wis. 2d 114, 128 N.W. 2d 411.

[2] See *Sigman* v. *Rudolph Wurlitzer Co.* (1937), 57 Ohio App. 4; *Smith* v. *Union Carbide Corp.* (E.D. Tenn. N.D. 1964), 231 F. Supp. 980; *Frietzsche* v. *First Western Bank and Trust Co.* (1959), 168 Cal. App. 2d 705, 336 P. 2d 589; *Levitt* v. *Billy Penn Corp.* (1971), 219 Pa. Super. 499, 283 A. 2d 873; *Thornberry* v. *MGS Co.* (1970), 46 Wis. 2d 592, 176 N.W. 2d 355.

and faithful source of manpower. The legal consideration flowing towards the employee is the protection of future retirement benefits. The net result is that private pension plans constitute deferred compensation, which, once vested, bestow upon the employee a legal right to the fruits of his continued labor.

In the instant cause, Boos and Morber, who were over the required retirement age of 65, with 43 and 35 years of continuous service respectively, had met all the requirements of the pension plan. They are entitled to their pensions according to the normal retirement provision. Accordingly, the trial court correctly ruled in their favor by granting these employees their pensions.

The more difficult question is whether the remaining employees qualified for pension rights. The controversy focuses on whether any employees qualify for pension rights according to the "early retirement" provision. In sum, this provision has three requirements: (1) Attainment of the age of 55; (2) 20 years of continuous service; and (3) retirement with the consent of the employer.

It is uncontroverted that many of the plaintiffs qualified as to the age and years of service requirements. Thus, the focus is whether these employees did, in fact, retire with the consent of the employer and thus qualified for the pension under the authority of the "early retirement" clause.

In the instant cause, the URW, by a letter dated September 28, 1973, indicated a desire to terminate the collective bargaining agreement on December 5, 1973, in the event negotiations failed. Since 1950 and until the December 5, 1973, termination, the URW purportedly terminated the collective bargaining agreement five times, but, in each instance, a renewal of virtually the same benefits was agreed upon. These terminations were simply for renegotiation of the level of benefits. Noting the past collective bargaining procedure of the URW and Sun, the termination can not be considered permanent. Accordingly, the termination should be considered as a notice to further negotiations and not destroy any accrued rights that an employee has earned through years of continued service.

These employees were denied the opportunity to retire by the defendant-company's voluntary closing of the plant. In

essence, the termination of the collective bargaining agreement on December 5, 1973, with the subsequent closing of the plant, must be considered as an "implied or forced" retirement, or both. In a similar situation, the District Court, in *Briggs* v. *Michigan Tool Co.* (E.D. Mich. S.D. 1974), 369 F. Supp. 920, at page 923, stated:

"There is no doubt that the defendant [employer] has a right to terminate the contract and to relieve itself of any further liability under the contract***but it does not have the right to excuse itself from liability already accrued under the contract, and for failure on its part to perform as required by the contract during the time the contract was in operation."

Finding the above rationale proper, those employees who had given 20 years of service and had attained the age of 55 *at the time of the plant closing* will be considered as being retired with the consent of the employer.

The Court of Appeals focused on those employees who had qualified by the early retirement option as of the termination of the bargaining agreement on December 5, 1973. That court correctly ruled that, by closing the plant, Sun had, as a matter of law, consented to the retirement of its employees. The Court of Appeals limited the availability of the early retirement option to those employees who qualified on or before the termination of the collective bargaining agreement on December 5, 1973. Keeping in mind the fact that the termination of the bargaining agreement was merely an intention to initiate further collective bargaining, the proper ruling would be to consider whether an employee is entitled to the early retirement option as of the date of the closing of the plant, rather than as of the date of termination of the collective bargaining agreement. Consequently, the rationale of the Court of Appeals is affirmed in part and modified in part to include those employees who qualified for early retirement from December 5, 1973, until the actual closing of the plant. These additional employees have complied with all the provisions of the pension plan and thus are entitled to derive the benefits.

### III.

Appellant Sun's fourth proposition of law was not raised in the lower courts. Questions neither raised nor passed upon in the lower court will not be ruled upon by the Supreme

Court. *Moats* v. *Metropolitan Bank of Lima* (1974), 40 Ohio St. 2d 47; *Clarington* v. *Althar* (1930), 122 Ohio St. 608; and *Hoffman* v. *Staley* (1915), 92 Ohio St. 505. Accordingly, Sun's fourth proposition is overruled.

*IV.*

Appellant Sun's fifth proposition of law asserts that the doctrine of *res judicata* or collateral estoppel bars the relitigation of the vested pension rights in the instant cause. Appellant claims that the prior case of *First National Bank of Akron* v. *Branan* (September 13, 1978), C.A. No. 8696, unreported, is determinative upon the issue in the cause *sub judice*. In *First National Bank, supra,* the pivotal issue concerned the rights and duties of the First National Bank under a trust arranged by defendant Sun to finance the pension agreement. The instant cause focuses on the responsibility of defendant Sun under the pension agreement, whereas in *First National Bank, supra,* the critical issue was the distribution of trust funds. Therefore, neither *res judicata* nor collateral estoppel is controlling, and appellant's fifth proposition of law is overruled.

*V.*

Cross-appellants' first proposition of law concerning those employees who qualified for the pensions after December 5, 1973, but before the cessation of operation of the plant, was fully discussed previously.

Cross-appellants, in their second and third propositions of law, in essence, assert that, since the pension fund is paid by monies which would otherwise be paid to the employees as wages, those employees who have not attained the requisites for retirement were still entitled to some compensation when the plant ceased operations. Noting the previous discussion in reference to vesting of pension rights, these propositions are without merit. As noted in *Cantor* v. *Berkshire Life Ins. Co., supra* (171 Ohio St. 405), all conditions of the employment contract must be fulfilled before pension rights are vested.

Nevertheless, cross-appellants, recognizing that many employees do not satisfy the requirements of the pension plan, claim that the failure to qualify for the pension should be excused, because the failure to qualify was the company's fault. Cross-appellants contend that those employees who did

not qualify for a pension are still entitled to recover the value of work partially performed but not totally compensated for under a quasi-contractual theory.

In *Lovetri* v. *Vickers, Inc.* (D.C. Conn. 1975), 397 F. Supp. 293, upon facts essentially similar to the instant cause, the District Court, at page 301, stated:

"Plaintiffs argue that by closing the Waterbury plant and terminating their employment, defendant made it impossible for them to fulfill the conditions that would entitle them to annuities based on the employer contributions. Unless a contract provides otherwise, should its performance become impossible, the promisee must repay the value of the benefit conferred on him by the partial performance of the promisor.***[Citations omitted.] Defendant, however, did not promise that plaintiffs would remain in defendant's employ until retirement, thereby becoming entitled to the annuity; it promised the annuity only if they actually remained employed until retirement. Plaintiffs, in other words, were not paid for their labor with an annuity, but only with the chance of receiving one should certain conditions be fulfilled."

We agree with that rationale and, applying it to the facts at bar, find that employees who do not satisfy the requirements of the pension plan will not be awarded any additional compensation. The explicit terms of the contract are controlling. The Court of Appeals correctly ruled that those employees who do not qualify for the retirement plan are not entitled to any contributions.

In view of the foregoing, the judgment of the Court of Appeals is affirmed in part and modified in part.[3]

*Judgment affirmed in part*
*and modified in part.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, SWEENEY and HOLMES, JJ., concur.

HERBERT, J., concurs in paragraph one of the syllabus only.

---

[3] Additionally, we note that, in order to prevent a windfall for those employees who qualify for a pension as discussed herein, any sum derived by said employees from the pro rata distribution of the trust fund as decreed in *First National Bank of Akron, supra,* shall be set off against the amount of pension.